STATE v. JAMES VANHOOK.

(Filed 2 November, 1921.)

1. **Constitutional Law—Police Powers.**

The police power is one inherent in the State as an attribute of government, and is not a grant derived from the written organic law.

2. **Same—Statutes—Municipal Corporations—Cities and Towns—Delegated Powers.**

The General Assembly has the authority to delegate legislative power to municipal corporations of limited or local character, relating to their governmental functions, or other proper and legitimate purposes.

3. **Same—Dance Halls—Statutes.**

Cities have power, among other things, to license, prohibit, and regulate dance halls, by express provision of C. S., 2787, and in the interest of public morals provide for the revocation of such licenses, as a valid exercise of the State's inherent police power, made applicable to cities and towns generally. C. S., 2786, art. 15.

4. **Same—Sound Discretion—Limited Powers.**

An ordinance requiring the consent of the board of directors of the city before keeping a dance hall therein is not objectionable as an arbitrary exercise of power, or as being at the pleasure of the board, but comes within its limited legal discretion, which the courts will not permit it to abuse, or will disturb in the absence of its abusive use.

CRIMINAL ACTION, tried before *Horton, J.,* at May Term, 1921, of DURHAM.

The warrant issued by the recorder is as follows: "G. W. Proctor, being duly sworn on information, says that James Vanhook on or about

26 May, 1919, with force and arms, at and in the county aforesaid, and within Durham Township, did willfully, maliciously, and unlawfully conduct the business of dance hall at which an admission fee was charged; he the said Vanhook not having a permit for said dance from the board of aldermen against the statute in such cases made and provided, and against the peace and dignity of the State."

On 7 May, 1919, the board of aldermen of the city of Durham adopted the following ordinance: "Be it ordained by the board of aldermen of the city of Durham that no person, firm, corporation, club or organization shall give, conduct or hold any dance, or conduct or maintain any dance hall within the city of Durham for which a charge shall be made to those attending, which charge is either in the form of admission or entrance dues paid to the person, firm, corporation, club or organization giving or holding the said dance or conducting the said hall or club room, without first having obtained the consent of the board of aldermen."

After this ordinance was adopted the defendant applied to the board for a license to conduct a dance hall in the city, and the license was refused. There was evidence for the defendant tending to show that he was "the social leader of the colored people of the city"; that he had "cultivated the fine art of dancing;" that he had "let them (aldermen) know he was a man of good character"; and that the board passed upon each application and granted or refused license in their discretion. There was evidence for the State tending to show that there had been "disturbing elements" in the defendant's dance hall—"fights and cursing"; and that some arrests had been made there. The defendant kept the hall open without a license. On appeal from the recorder's court he was convicted in the Superior Court, and after judgment was pronounced, he excepted and appealed. The only question presented is whether the ordinance is valid exercise of the police power.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*R. O. Everett for defendant.*

ADAMS, J. It is conceded that the police power, regarded as an attribute of government, is inherent in the states, and is not a grant derived from the written organic law. The difficulty of drawing the boundary line which divides the police power from the other functions of government has often been recognized, but Judge Cooley's definition of the police power of a state has met the approval of many courts. He says that this expression "embraces the whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the inter-

course of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of right, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." The police power has been described as the law of necessity, and as the power of self-protection on the part of the community. 6 R. C. L., 186. Upon the proper exercise of this power depend the life, safety, health, morals, and comfort of the citizen, the enjoyment of private and social life, the beneficial use of property, and the security of social order. *Slaughterhouse cases,* 16 Wall., 62. In *Pearsall v. R. R.,* 161 U. S., 666, it is said: "And so important is this power and so necessary to the public safety and health, that it cannot be bargained away by the Legislature, and hence it has been held that charters for purposes inconsistent with a due regard for the public health or public morals may be abrogated in the interests of a more enlightened public opinion."

The legal right of the General Assembly to delegate legislative power to municipal corporations is well settled, when the power granted is such as relates to the exercise of governmental functions of limited or local character, or to other legitimate and proper municipal purposes. *S. v. Austin,* 114 N. C., 857; *S. v. Dudley, ante,* 822.

Chapter 56 of the Consolidated Statutes is divided into three subchapters. The first deals with regulations which are independent of the act of 1917; the second, with the Municipal Corporation Act of 1917; and the third with the Municipal Finance Act. By sec. 2623 (7), in the first subchapter, a city or town is authorized to provide for the municipal government of its inhabitants in the manner required by law, and by sec. 2673, the commissioners are empowered to make ordinances, rules, and regulations for the better government of the town, not inconsistent with the law of the land. By sec. 2786, which is in the second subchapter, the provisions of Art. 15 are made applicable to all cities and towns whether or not they have adopted the plan of government, and the powers therein granted are declared to be in addition to and not in substitution of the existing powers of cities and towns. Section 2787 provides that in addition to and coördinate with the power granted to cities in subchapter 1, and any acts affecting such cities, all cities shall have power "to license, prohibit, and regulate pool and billiard rooms and dance halls, and in the interest of public morals provide for the revocation of such licenses." The ordinance in question was enacted in pursuance of this authority, and is clearly a valid exercise of the police power of the State. Instances of a similar exercise of the police power may be found in ordinances which prohibit disorderly conduct, or abusive or indecent language, or the entrance of an unmarried minor

into a saloon, or the pursuit of one's ordinary business on Sunday; or which regulate the weighing of cotton, or the running at large of bird dogs during the closed season for quail, or vaccination for the public health, or which deal with various other situations affecting the health, comfort, morals, and safety of the people. *S. v. Sherrard*, 117 N. C., 717; *S. v. Earnhardt*, 107 N. C., 789; *S. v. Austin*, 114 N. C., 855; *S. v. Tyson*, 111 N. C., 687; *S. v. Hay*, 126 N. C., 999; *S. v. Blake*, 157 N. C., 609; *S. v. Burbage*, 172 N. C., 876.

The counsel for the defendant contends that the ordinance confers upon the board of aldermen unlimited discretion in granting or refusing license, that it prescribes no uniform rule by which the board shall be guided, and that the aldermen consequently pass upon each application "according to their own pleasure." But the board is not clothed with arbitrary or unlimited discretion. Whether a license shall be granted upon application is a matter within the limited legal discretion of the board. It is true that in the absence of abuse such discretion cannot be controlled by the courts, but the ordinance is not for that reason void. *Brodnax v. Groom*, 64 N. C., 244; *Key v. Bd. of Education*, 170 N. C., 125. Of course uniformity of operation upon all alike is essential, but this requirement is met by the express language of the ordinance.

In view of the evidence tending to show the "disturbing elements" in the defendant's hall, the "fighting and cursing," and the arrests that had been made there, we must assume that due regard for the public welfare impelled the aldermen in the exercise of their limited legal discretion to refuse the license.

The defendant's counsel relies chiefly on *S. v. Tenant*, 110 N. C., 609. In that case it appears that the city of Asheville had enacted the following ordinance: "That no person, firm, or corporation shall build or erect within the limits of the city any house or building of any kind or character, or otherwise add to, build upon, or generally improve or change any house or building, without having first applied to the aldermen and obtained a permission for such purpose." This ordinance was held void on the ground that it was an unwarranted interference with the ordinary incidents of ownership at the arbitrary will of the board of aldermen without valid reason, and that it had no reasonable relation to the exercise of the police powers vested in the board for the well ordering of the city. This objection cannot avail the defendant in the case before this Court. *Brunswick-Balke Co. v. Mecklenburg*, 181 N. C., 388.

No error.