ELEANOR BIZZELL, BY HER GUARDIAN, LAURA S. BIZZELL, v. BOARD OF ALDERMEN OF THE CITY OF GOLDSBORO ET AL.

(Filed 20 October, 1926.)

1. **Constitutional Law — Municipal Corporations — Ordinances — Filling Stations—Guardian—License—Discrimination.**

The erection and maintenance of a gasoline filling station, in conformity with the statutory regulations and those conferred by statute, upon local municipal authorities, is not a nuisance, but involves the lawful property rights guaranteed by the Constitution of the United States (Fourteenth Amendment), and of the State.

**2. Same—Discrimination—Police Powers.**

A city ordinance which professes to regulate the erection and maintenance of gasoline filling stations within the incorporated limits thereof, providing in effect that permits for such stations shall not be granted without the consent of the board of aldermen of the city, is in violation of property rights guaranteed by the Constitution in not prescribing a uniform rule by which such permits may be obtained. The distinction between the conduct of a business that is not harmful and unsafe and those that are, and fully within the lawful exercise of the police power of a municipality, pointed out and distinguished by *Clarkson, J.*

**3. Same—Discretionary Powers—Notice—Hearings—Courts — Abuse of Discretion—Appeal and Error.**

Where the conduct of a business is lawful, and falls within the police powers of regulation by a municipality or such as may affect the public morals, health, etc., of the municipality, notice must first be given to one applying for license, or who is affected by the revocation of his license, and a hearing afforded him, and decision made according to the sound discretion of the municipal authorities with right of appeal to the courts as to whether the discretion vested in them had been arbitrarily or unjustly exercised or not.

**4. Municipal Corporations—Constitutional Law—Ordinances—Mandamus.**

Mandamus will lie to compel a municipal corporation to issue a license for a lawful business, in this case the erection and maintenance of a gasoline filling station within the corporate limits, unlawfully refused under an invalid municipal ordinance.

STACY, C. J., dissenting.

APPEAL by defendants from *Sinclair, J.,* from order at Chambers, April, 1926 of WAYNE.

This was an action by plaintiff against defendants that an alternate writ of mandamus be issued directing the building inspector of Goldsboro to issue permit, or for the building inspector and the other defendants to show cause why said permit should not be issued.

The plaintiff, in part, contends that she is the owner and in possession of a lot of land situated in the city of Goldsboro at the northwestern intersection of West Center and Ash Streets, that during the month of February, 1926, the plaintiff leased said lot of land to the Sinclair Oil Company, which company proposed erecting and operating a gasoline filling station on said land, and to that end the said company duly applied to the city of Goldsboro for a permit to construct and operate said station. That the building inspector of the city of Goldsboro is the officer created by law to pass upon applications for permits to construct buildings in the city of Goldsboro, and that it is the duty of said inspector to issue permits for the construction and operation of filling stations in the city of Goldsboro and to require the applicant to conform to the building laws of the State.

That at a regular meeting of the board of aldermen, held in the city of Goldsboro on 7 July, 1924, the board of aldermen adopted the three ordinances, as follows: "Be it ordained by the board of aldermen of the city of Goldsboro: That no gasoline filling or gasoline storage station shall hereafter be located, conducted or operated in the city of Goldsboro without first obtaining consent from the board of aldermen at some regular meeting thereof. Any person, firm or corporation, violating this ordinance shall, upon conviction, before the mayor, be fined $50 for each offense, and every day of such violation shall constitute a separate offense.

"Be it ordained, by the board of aldermen of the city of Goldsboro: That no gasoline filling or gasoline storage station shall start operation thereof in the city without first obtaining permission from the board of aldermen to do so at a regular meeting thereof. Any person, firm or corporation, violating this ordinance, shall, upon conviction before the mayor, be fined $50 for each offense, and every day of such violation shall constitute a separate offense.

"Be it ordained by the board of aldermen of the city of Goldsboro: That all permits heretofore issued for gasoline filling or gasoline storage stations in the city which are not already constructed, be and the same are hereby revoked."

That each of said ordinances is unconstitutional and void, and particularly objectionable in that they do not prescribe a uniform rule of action for governing the exercise of the discretion of the aldermen, but on the contrary leave the rights of property subject to arbitrary discretion of the board.

That having agreed with the plaintiff as to the terms of the lease referred to above, the Sinclair Oil Company applied to the board of aldermen of the city of Goldsboro for a permit to construct said filling station on the lot of the plaintiff, and the plaintiff, through her attorney likewise appeared before the board of aldermen requesting said permit; that the said aldermen refused to issue the permit.

That the plaintiff applied to the building inspector of the city of Goldsboro for a permit to construct said filling station and the said inspector refused to issue the permit.

That the lot of the plaintiff herein referred to is situated at the intersection of State Highway No. 10 and West Center Street, which is one of the principal business streets in the city of Goldsboro; eastwardly across the street from the plaintiff is the Durham Hosiery Mills; diagonally across the street is the filling station of the Texas Company; southwardly and across highway No. 10 a mercantile establishment, livery stable and blacksmith shop; on West Center Street and in front of the plaintiff's lot are the railroad tracks of the Southern, Atlantic Coast

Line and Norfolk Southern railroads. That the action of the city of Goldsboro in refusing to issue said permit was an arbitrary and unreasonable exercise of discretion and is unlawful.

That the filling station which plaintiff proposed erecting on said lot would comply in every respect with the building laws of the State of North Carolina and the ordinances and regulations of the city of Goldsboro, and that therefore the building inspector has no authority to reject said application, and, as the plaintiff is informed and believes, must issue said permit subject to the supervision by him of the construction and material as directed in C. S., 2748.

The defendant admits that the Sinclair Oil Company applied to the city of Goldsboro for a permit to construct and operate a gasoline station at the northwest intersection of East Center and Ash streets in the city of Goldsboro. It admits that, subject to statutory regulations and valid ordinances of the city of Goldsboro, and in some instances to prior consent by the board of aldermen, it is the duty of the building inspector of said city to pass upon permits for the construction of buildings. It is specifically denied that the special ordinances are unconstitutional or void or objectionable for any reason; and in this connection alleges that said ordinances constitute valid and constitutional exercise of power on the part of the board of aldermen of the city of Goldsboro. That the board of aldermen were induced to reach their decision by a number of reasons, among them the following: That the proposed location for a filling station is located within two blocks and a half of one of the primary schools of the city and on the direct route of the approach thereto, and that this fact, together with the fact that Ash Street (said street of approach to said school) is also a part of the Central Highway of North Carolina, would make the construction of a filling station on said corner a continual menace to the school children going to and from said school; that a further consideration was the fact that said proposed filling station would be located adjoining a residential section of said city, and that there is no business necessity requiring the erection of a filling station on said corner, in view of the fact that there are five other filling stations not far removed from the proposed site.

The court below rendered the following judgment:

"This cause coming on to be heard before his Honor, Sinclair, J., at chambers, and being heard upon the verified complaint and answer, and upon affidavits filed by the city of Goldsboro herein and upon argument of counsel for the plaintiff and counsel for the defendants, and it appearing to the Court after a full consideration of said pleadings, affidavits and arguments that the plaintiff is entitled to the relief demanded in the complaint. It is thereupon considered, ordered and

adjudged that the building inspector of the city of Goldsboro be and he is hereby ordered and directed to issue a permit to the plaintiff for the construction of a filling station upon the lot described in the complaint, subject to the conformance by the plaintiff with the building laws of the State of North Carolina."

*Hugh Dortch and Dickinson & Freeman for plaintiff.*
*D. C. Humphrey and Kenneth C. Royall for defendants.*

CLARKSON, J. The sole question presented: Are the ordinances valid or void? We are of the opinion they are void.

. In *S. v. Deposit Co.*, 191 N. C., 645, it was said: "The police power of a state is broad and comprehensive. It is elastic so that the governmental control may be adequate to meet changing social, economic and political conditions. Under the United States Constitution the police power has been left to the states—in fact it is inherent in the states. Each state has the power to regulate the relative rights and duties of all persons, individuals and corporations within its jurisdiction for the public convenience, welfare and good—for public health, public morals and public safety. The only limit is that no law shall be enacted repugnant to the Constitution of the United States (14th Amendment) or the State. *Durham v. Cotton Mills,* 141 N. C., 615; *Shelby v. Power Co.,* 155 N. C., p. 196; *Shields v. Harris,* 190 N. C., 527; *Moore v. Greensboro, ante,* p. 592; 6 R. C. L., sec. 188-190."

In *Weaver, Chief of the Bureau of Inspection,* etc., of *Penn. v. Palmer Bros. Co.,* Supreme Court of U. S. Advance Opinions, p. 366 (70 Law Ed.), the facts succinctly were: Palmer Bros. Co., a Connecticut corporation, had a large factory in Connecticut, in which for more than a half century it had manufactured *comfortables* in that state and had sold them there and elsewhere, and in the State of Pennsylvania. In Pennsylvania a law was passed regulating the manufacture, sterilization and sale of bedding. In the act the definition of "shoddy" was, "any material which has been spun into yarn, knit or woven into fabric, and subsequently cut up, torn up, broken up or ground up." It was made a violation of law, punishable by fine or imprisonment to make comfortables with "shoddy" or to sell comfortables made with "shoddy." The evidence disclosed by eminent public health scientists is that in the absence of sterilization or disinfection, there would be little if any danger to the health of the users of comfortables filled with "shoddy." There was no evidence that any sickness or disease was ever caused by the use of "shoddy." *Mr. Justice Butler,* writing the majority opinion, says: "The constitutional guaranties may not be made to yield to mere convenience, *Schlesinger v. Wisconsin,* decided 1

March, 1926, ........ U. S., ........ *ante,* 301, 46 Sup. Ct. Rep., .... The business here involved is legitimate and useful; and, while it is subject to all reasonable regulation, the absolute prohibition of the use of shoddy in the manufacture of comfortables is purely arbitrary and violates the due process clause of the 14th Amendment. *Adams v. Tanner,* 244 U. S., 590, 596; *Meyer v. Nebraska,* 262 U. S., 390; *Jay Burns Baking Co. v. Bryan,* 264 U. S., 504." *Mr. Justice Holmes,* dissenting, said: "In this case, as in *Schlesinger v. Wisconsin,* I think that we are pressing the 14th Amendment too far." Concurring were *Mr. Justice Brandeis* and *Mr. Justice Stone.*

In *S. v. Yopp,* 97 N. C., p. 481, *Merrimon, J.,* said: "Such statutes are valid unless the purpose or necessary effect is not to regulate the use of property but destroy it." *S. v. Whitlock,* 149 N. C., 542; *Standard Oil Co. v. City of Kearney,* 106 Neb., p. 558.

C. S., chap. 56, Municipal Corporations, Art. 11, provides for "Regulation of Buildings" for protection against fire, etc., in municipalities. In this chapter the Legislature has laid down stringent rules in regard to the regulation of buildings within and without the fire limits of the municipalities. It is compulsory on municipalities to establish fire limits. It provides for the building inspector to grant building permits. It provides in certain localities the material, etc., to be used. A comprehensive safety regulation of buildings is provided by law for municipalities.

Under Art. 15, General Powers of Municipal Corporations are enumerated. C. S., 2787, subsec. 6, is as follows: "To supervise, regulate, or suppress, in the interest of public morals, public recreations, amusements and entertainments, and to define, prohibit, abate or suppress all things detrimental to the health, morals, comfort, safety, convenience, and welfare of the people, and all nuisances and causes thereof." C. S., 2787, subsec. 16, is as follows: "To regulate, control, and prohibit the keeping and management of houses or any building for the storage of gunpowder and other combustible, explosive, or dangerous materials within the city, and to regulate the keeping and conveying of the same, and to authorize and regulate the laying of pipes and the location and construction of houses, tanks, reservoirs, and pumping stations for the storage of oil and gas."

The board of aldermen of the city of Goldsboro passed an ordinance, the material one that concerns us here, *prohibiting gasoline filling or gasoline storage stations to be located, conducted or operated in the city of Goldsboro without first obtaining consent from the board of aldermen at some regular meeting thereof.*

The plaintiff contends that the ordinance is unconstitutional and void, that it vests arbitrary discretion with respect to an ordinary law-

ful business in public officials, without prescribing a uniform rule of action or making uniform regulations applicable to all alike.

In *S. v. Tenant,* 110 N. C., p. 609, *"Mission Hospital case,"* the ordinance was as follows: "That no person, firm or corporation shall build or erect within the limits of the city any house or building of any kind or character, or otherwise add to, build upon or generally improve or change any house or building, *without having first applied to the aldermen and obtained a permission for such purpose."* The Court said: "If an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of aldermen who may exercise it so as to give exclusive profits or privileges to particular persons, *Newton v. Belger,* 143 Mass., 598; *City of Richmond v. Dudley,* Northern Reporter, vol. 28, No. 13, p. 312; *Yick Wo v. Hopkins,* 118 U. S., 356; *May v. People,* 27 Pac. Rep., 1010; *Baltimore v. Rodeck,* 49 Md., 217; *Anderson v. City of Wellington,* 40 Ka., 173; *In re Frazee,* 63 Mich., 396; *Tugman v. Chicago,* 78 Ill., 405; *Village of Braceville v. Doherty,* 30 Ill. Ap., 645; *Barthel v. City of New Orleans,* 564; *Bolls v. City of Goshen,* 117 Ill., 221; *Lake View v. Lutz,* 44 Ill., 81; Horr & Bemis on Mun. Police Ordinances, sec. 13; *Evansville v. Martin,* 41 Ind., 145." The *City of Plymouth v. Schultheis,* 135 Ind., p. 339; *City of St. Louis v. Russell,* 20 L. R. A., p. 721 (Mo.), (the latter case citing *S. v. Tenant, supra).*

In *S. v. Bass,* 171 N. C., p. 781, it was said: "Stables are not *per se* nuisances at common law, to be abated regardless of the manner in which they are kept. *Dargan v. Waddill,* 31 N. C., p. 244." In the *Bass case,* the *Tenant case, supra,* was approved. The ordinance declared void was to the effect that no person or persons, firm or corporation, shall build or cause to be *erected stables or stalls nearer to a neighbor's residence than it is to the owner's.* The court further said (pp. 781-782): "Its purpose is presumed to be to improve the health of the inhabitants of the town, as well as to minister to their comfort. It fails conspicuously to accomplish such purpose, as under it stables may be kept with impunity obnoxiously near any number of dwellings if they are equally as near the dwelling of the owner of the stables. Thus it is put within the power of the owner to annoy his neighbor at will if he is willing to endure the same annoyance himself. An ordinance to be valid *must be uniform in its application to all citizens*

*and afford equal protection to all alike. It must not ·discriminate in favor of one person or class of persons over others. To be valid it must furnish a uniform rule of action.* (Italics ours). *S. v. Tenant,* 110 N. C., 612. It must operate equally upon all persons, as well as for their equal benefit and protection, who come or live within the corporate limits. 1 Dillon Mun. Corp., sec. 380; *S. v. Pendergrass,* 106 N. C., 664; *S. v. Summerfield,* 107 N. C., 898."

The construction of a filling station dealing with property rights, cannot be placed in a class with one applying for a license to operate a poolroom or dance hall, etc., which is a privilege as distinguished from a legitimate business in which one is authorized to engage as a matter of right. We think this distinction has been clearly recognized in this State. *Brunswick-Balke Co. v. Mecklenburg,* 181 N. C., 386; *S. v. Vanhook,* 182 N. C., 831.

In *Brunswick-Balke Co. v. Mecklenburg, supra,* p. 388, *Hoke, J.,* speaking to the question, says: "In *S. v. Tenant,* 110 N. C., 609, the case in this State chiefly relied upon by appellant, involved the validity of an ordinance of the city of Asheville, which prohibited any and all owners of property within the city from building or erecting anywhere in the city limits any house or building of any kind or character or adding to or altering any house or building already constructed without first obtaining permission from the board of aldermen. The court held the ordinance void, as an unwarranted interference with the ordinary incidents of ownership, at the arbitrary will of the board of aldermen without valid reason had or assigned for their action, and as having no reasonable relation to the exercise of the police powers vested in the board for the well ordering of the town."

In *Hanes v. Carolina Cadillac Co.,* 176 N. C., p. 351, it is held: "Automobiles are of such general use that they have become a part of the daily life of our people in business as well as for pleasure. Public garages and supply stations are essential and cannot well be dispensed with. *The establishment of such public conveniences even in residential sections of cities and towns have been held not to be a nuisance per se.* (Italics ours). *Sheman v. Lexington,* 128 N. Y., 681. It has been further held that the storage of gasoline in suitable tanks set well down in the earth does not constitute a nuisance *per se.* *Harper v. Standard Oil Co.,* 78 Mo., 338; *Cleveland v. Gaslight Co.,* 20 N. J. Eq., 201."

In *Refining Co. v. McKernan,* 179 N. C., p. 314, applicable to gasoline, etc., the ordinance applied to all classes alike, no discrimination, no discretionary power given as in the present case.

It is to be seen that this Court has held that the business of dealing in gasoline and oil is legitimate business in municipalities and not a

nuisance *per se,* so all persons have the right to engage in this business upon equal terms and conditions. Some courts classify this business with pawnbrokers, poolrooms and dance halls, which have been held to be mere privileges and not classified as legitimate business.

In *Small v. Edenton,* 146 N. C., 530, it is said: "The reasonableness of an ordinance is for the court, the jury being called in to find the facts when in dispute."

In *Barger v. Smith,* 156 N. C., p. 323, a town ordinance prohibited the erection of any saw mill or other steam mill *within certain boundaries.* It is said, at p. 324: " 'An ordinance must not be oppressive or discriminating, but must be reasonable and lawful.' 2 Dill. Mun. Corp. (5 ed.), sec. 589; 2 Abb. Mun. Corp., sec. 545. When an ordinance is 'within the grant of power to the municipality, the presumption is that it is reasonable, unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable upon a state of facts being shown which makes it unreasonable.' *Ibid.,* sec. 591, and cases there cited. It is further said that 'an ordinance must be impartial, fair and general. It would be unreasonable and unjust to make under the same circumstances an act done by one person penal and done by another not so. Ordinances which have this effect cannot be sustained. Special and unwarranted discrimination or unjust or oppressive interference in particular cases is not to be allowed.' *Ibid.,* 593."

In *S. v. Rice,* 158 N. C., p. 655, in the interest of health an ordinance was sustained forbidding keeping of hogs and pigs (a nuisance *per se*) within one-fourth mile of the city limits of Greensboro. The Legislature giving police power for sanitary purposes to the territory one mile beyond the city limits. A like ordinance in *S. v. Hord,* 122 N. C., p. 1092, was sustained forbidding keeping a hog 100 yards from another's dwelling, etc. There is no discrimination in either of these cases for it forbids all citizens alike.

In *Lawrence v. Nissen,* 173 N. C., p. 363, it is said: "The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws. This is the rule laid down by the Supreme Court of the United States in *Soon Hing v. Crowley,* 113 U. S., 709. It is those restrictions imposed upon one class of persons engaged *in a particular business,* which are not imposed upon others engaged in the same business and under like conditions, that impair the equal right which all can claim in the enforcement of the laws." *S. v. Denson,* 189 N. C., p. 173.

In *Turner v. New Bern,* 187 N. C., p. 541, the principle was laid down: Under the provisions of C. S., 2787, and under the provisions of its charter authorizing a city to pass needful ordinances for its government not inconsistent with law to secure the health, quiet, safety—general welfare clause—within its limits, etc., it is within the valid discretionary exercise of the police powers of the municipality to pass an ordinance forbidding the erection of lumber yards within a long established, exclusively residential portion, and when this discretionary power has not been abused the courts will not interfere. In the *Turner case, supra,* there were prescribed limits applicable to all. *S. ex rel. Nat. Oil Works of La. v. McShane, Mayor,* 159 La., ..., 106 Sou. Rep., 252.

*S. v. Weddington,* 188 N. C., 643, was a Sunday ordinance held valid, as follows: "That it shall be unlawful for any person or persons, merchants, tradesmen, or company to sell or offer for sale on Sunday any goods, wares, drinks or merchandise of any kind or character, except in case of sickness or absolute necessity, in the town of Faith." This is a different class of ordinance from the one under consideration. The Sunday ordinances are predicated on the idea that there should be a rest day for man. It is a police regulation necessary to the health and welfare of a people. The forbidding keeping open stores gives the rest and applies to all in the town alike. To the same effect is *S. v. Medlin,* 170 N. C., 682; *S. v. Davis,* 171 N. C., 809; *S. v. Burbage,* 172 N. C., 876; *S. v. Lumber Co.,* 186 N. C., 122.

"General Assembly or a municipal corporation has the power to classify the different occupations, provided the classification is not unreasonable and oppressive, and that usually the extent to which the power will be exercised is for the General Assembly or the governing body of the municipality." *S. v. Davis, supra.*

The principle is well stated in 19 R. C. L., p. 813, part sec. 118: "It is clear that an ordinance is passed by a municipal corporation which upon its face restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of the municipal officers, who may exercise it in accordance with some principle which it would not be within the constitutional power of the State to sanction or even so as to give exclusive profits and privileges to particular persons. There is, however, no valid objection to an ordinance which vests in a municipal board, or vests in a single officer, authority to grant permits or licenses to engage in an

occupation or commit an act which might well be forbidden altogether, but which under certain conditions and when in the hands of persons of good character may be harmless, when this is a reasonable method of dealing with the situation. The distinction is not always clear, and the cases are perhaps not wholly consistent," citing *S. v. Tennant, supra.*

We are not unmindful of the case of *S. v. Shannonhouse,* 166 N. C., 241, and cases therein referred to. In these cases, in pursuance of authority (or inherent power), the town specifically prescribed fire limits applicable to all alike. This case, cited with approval *S. v. Johnson,* 114 N. C., p. 848, which was written by *Mr. Justice Avery,* who wrote the *Tenant case.* In *S. v. Kirkpatrick,* 179 N. C., p. 747, the ordinances applied to all alike. There are exceptional cases where it is difficult or impracticable to lay down a definite comprehensive rule or the discretion relates to an administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare, but in cases of this kind the exercise of discretion must not be unreasonable or arbitrary.

Interesting opinions, holding defendant's contention correct, are: *The State of Washington v. C. A. Fleming,* 129 Wash. Rep., p. 646; *Herring v. Stannus,* 169 Ark., p. 244, 275 S. W., p. 321.

There is no question as to the good faith of the mayor or board of aldermen of Goldsboro—men of character. The ordinances are far-reaching, and the law does not permit the enjoyment of one's property to depend upon the arbitrary or despotic will of officials, however well-meaning, or to restrict the individual's right of property or lawful business without a general or uniform rule applicable to all alike.

In this State, dealing in gasoline and oils is a legitimate business and so declared. Any valid ordinance must come under the time-honored rule of equal rights and not be dependent on arbitrary or despotic will. No ordinance is enforceable in matters of this kind, a lawful business, that does not make a general or uniform rule of equal rights to all and applicable to all alike—then there can be no special privilege or favoritism. The ordinance gives the power to the board of aldermen at their pleasure to grant one person a license and refuse another under the same circumstances. The cleavage and question is less troublesome when the distinction is observed between those things that are not harmful and unsafe and those that are. The right of individuals to engage in any lawful calling and use their property for lawful purposes is guaranteed to them, and any unreasonable restraint or oppressive exaction upon the use of property and utmost liberty of business growth and advancement is contrary to the fundamental law of the land.

In the case at bar we are dealing with property rights and a lawful business—not unsafe, according to the decisions of this Court. There

is a distinction between a case of this kind and a privilege or license to operate a poolroom, dance hall and such like, the ordinance operating equally upon a class or classes, which may affect the peace and good order of a municipality or county, or a privilege or license for a profession, trade or occupation under the police power, etc. But even in cases of this kind, where it is essential that power should be lodged in some governmental or municipal board or officer to withhold or revoke the license, the applicant for or revocation of license should be given notice and a hearing had and decision made according to their sound discretion and judgment. But action in these cases may be reviewed when it is shown that it has been palpably arbitrary or unjust. It is to be noted that the general State law, applicable to municipal corporations, has provided safety regulations applicable to all alike and the judgment of the court below requires conformity.

We do not think that the reference in the pleadings to the acts of the city planning commission of the city of Goldsboro enters into this controversy, although it may be noted that by a vote of two to one the commission recommended that the permit be granted.

The decisions are conflicting in other states, but the principle applicable in the present case, we think, is borne out by the decisions of the United States Supreme Court, in this State and a large majority in the other states of the Union, and founded on reason and justice.

For the reason given, the judgment of the court below is

Affirmed.

STACY, C. J., dissenting: The ordinances in question are assailed upon the ground that they provide no standard or uniform rule whereby the discretion vested in the board of aldermen, to issue or to withhold permits for the erection and operation of gasoline filling or gasoline storage stations in the city of Goldsboro, may be exercised according to some fixed regulation, known and established, and applicable to all alike. The attack was upheld by the trial court, and this is affirmed, for the reason stated, principally on authority of *S. v. Tenant,* 110 N. C., 609.

It is established by the clear weight of authority that an ordinance which lays down no general requirements to be followed and establishes no uniform rule, but merely prohibits the erection of any building within the corporate limits without a permit, is invalid, since it leaves the granting of a permit for any kind of a building to the arbitrary discretion of the municipal authorities, to be exercised according to their own will and subject to no review, which is regarded as an unwarranted use of the police power. 4 R. C. L., 395.

But, to my mind, the position is not sustained by the decision in *Tenant's case,* nor by the general rule of law announced therein. There, the court was dealing with an absolute prohibition against all owners of property within the city of Asheville from building or erecting anywhere in the city limits any house or building of any kind, or adding to or altering any house or building already constructed, without first obtaining permission so to do from the board of aldermen. The ordinance was declared invalid as an unwarranted interference with the ownership of property and its ordinary incidents. The board of aldermen was authorized to act, without valid reason had or assigned for its position, which was regarded as an unrestrained discretion, having no reasonable relation to the exercise of the police powers vested in the board for the well ordering of the city. Here the ordinances are much more restricted in their scope and operation. They apply to a single class of buildings, to wit, gasoline filling or gasoline storage stations, the regulation of which comes well within the police power of the State. *Storer v. Downey,* 215 Mass., 273. The permits are to be issued or withheld in the sound legal discretion of the board only after a hearing had at some regular meeting, a distinction fully recognized in *Yick Wo v. Hopkins,* 118 U. S., 356, and other cases cited by appellant. *Brunswick-Balke Co. v. Mecklenburg,* 181 N. C., 386.

Answering a like criticism leveled at an ordinance of the city of Durham, which prohibited the maintenance of a dance hall within the city limits for hire, "without first having obtained the consent of the board of aldermen," *Adams, J.,* speaking for the Court in *S. v. Vanhook,* 182 N. C., 831, said: "The counsel for the defendant contends that the ordinance confers upon the board of aldermen unlimited discretion in granting or refusing license, that it prescribes no uniform rule by which the board shall be guided, and that the aldermen consequently pass upon each application according 'to their own pleasure.' But the board is not clothed with arbitrary or unlimited discretion. Whether a license shall be granted upon application is a matter within the limited legal discretion of the board. It is true that in the absence of abuse such discretion cannot be controlled by the courts, but the ordinance is not for that reason void. *Brodnax v. Groom,* 64 N. C., 244; *Key v. Board of Education,* 170 N. C., 125. Of course uniformity of operation upon all alike is essential, but this requirement is met by the express language of the ordinance."

The decisions hold that the validity of the grant of discretion depends largely upon the nature of the business or thing with respect to which it is to be exercised, and as to whether or not its proper regulation and control require a discretion to be vested in one or more public officials

for the orderly control of the business, or the use of the article or thing in question. Note, 12 A. L. R., 1435.

A gasoline filling or gasoline storage station may not be a nuisance *per se,* but it may become such, like a hospital *(Lawrence v. Nissen,* 173 N. C., 359), a livery stable *(S. v. Bass,* 171 N. C., 781), a dance hall *(S. v. Vanhook,* 182 N. C., 831), a sawmill *(Barger v. Smith,* 156 N. C., 323), or a poolroom *(Brunswick-Balke Co. v. Mecklenburg,* 181 N. C., 386), because of its location or by reason of the manner in which it is conducted. Oil and gasoline, invariably used and stored in such stations, are so highly inflammable and explosive that they may, and do, increase the danger to fire, no matter how carefully the buildings are constructed or how noncombustible their materials. And although lawful and necessary buildings, they are of such character that regulation of the place of their erection and use comes well within settled principles relating to the exercise of the police power. "The State is not bound to wait until contagion is communicated from a hospital established in the heart of a city; it may prohibit the establishment of such hospital there, because it is likely to spread contagion. So the keeping of dangerous explosives and inflammable substances, and the erection of buildings of combustible materials within the limits of a dense population may be prohibited because of the probability or possibility of public injury." *Walker, J.,* in *Durham v. Cotton Mills,* 141 N. C., p. 636.

Furthermore, the trend of judicial decision is to the effect that it is not always necessary for a statute, or ordinance, to prescribe a specific rule of action. It is well recognized that many statutes call for the vesting of some discretion in public officials, because of the difficulty or impracticability of laying down a definite and comprehensive rule which will afford at once an adequate protection for the public as well as for the individual citizen. *S. v. Yopp,* 97 N. C., 477.

It is fully recognized that the right of classification is "referred very largely to the legislative discretion, and its exercise may not be interfered with by the courts unless the same is clearly arbitrary." *S. v. Stokes,* 181 N. C., 539; *S. v. Burnett,* 179 N. C., 735.

Speaking to the question in *City of Des Moines v. Manhattan Oil Co.,* 193 Iowa, 1096, *Weaver, J.,* says: "With the changing conditions necessarily attendant upon the growth and density of population, and the ceaseless changes taking place in method and manner of carrying on the multiplying lines of human industry, the demand becomes greater upon that reserve element of sovereignty which we call the police power, for such reasonable supervision and regulation as the State may impose, to insure observance by the individual citizen of the

duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others (citing authorities). Such duty, even though it involves restriction upon the so-called natural rights of every individual, is the first and most imperative obligation entering into what we call the social compact. Without it there can be no such thing as organized society or civilized government. Naturally, what regulations may reasonably be required or imposed for that purpose by the constituted authorities vary with the varying conditions with which our lawmakers have to deal; and, subject only to constitutional limitations, the State, acting by its Legislature, has the right to select the subjects of regulation and to prescribe rules for making such regulations effective. To justify the exercise of such authority, it is not necessary that the subject thereof shall be inherently wrong; nor is the fact that such regulation may operate to restrict the individual citizen in the use of his own property, or even in his liberty, of itself sufficient to render the regulation or restriction void (citing authorities).

"The power to designate the subject of police regulation rests in the State alone; and if a given statute is not clearly repugnant to some constitutional guaranty, the courts are without power to interfere. Such interference, if tolerated at all, must be on the theory that the subject of the regulation is not within the legislative jurisdiction; or, if the subject be one within such jurisdiction, it must appear to the Court that, looking through mere forms, and at the substance of the matter, it can say that the statute, enacted professedly in the interest of the public or general welfare, 'has no substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law' (citing authorities). The Legislature, acting within these limits, is the sole judge as to all matters pertaining to the public policy, wisdom, and expediency of the police regulations which it prescribes (S. v. Armour Pkg. Co., 124 Iowa, 323, 12 Corpus Juris, 932); and while the police power is familiarly exercised in regulations to promote the public health and morals, it extends as well to the promotion of 'public convenience and general prosperity.' Chicago, B. & O. R. Co. v. People of Ill., 200 U. S., 561."

In S. v. Fleming, 129 Wash., 646, 225 Pac., 647, 34 A. L. R., 500, it was held that an ordinance vesting in the city council of Spokane the discretion to grant or deny, after public hearing, permits for gasoline filling stations, outside the fire limits of the city, as the public interest might require, was not invalid as vesting an arbitrary discretion in the council. This position is fully supported, in tendency at least, by the decisions in Fischer v. St. Louis, 194 U. S., 361, and New York ex rel.

*Lieberman v. Van DeCarr,* 199 U. S., 552, where the subject is discussed at considerable length.

In the case last cited the Court had under consideration a section of the sanitary code of New York, which provided that "no milk shall be received, held, kept, either for sale or delivered in the city of New York, without a permit in writing from the board of health, and subject to the conditions thereof." One objection to this provision was that it put absolute power in the hands of the board of health to grant or withhold permits to milk dealers, and therefore violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. In the course of an elaborate opinion sustaining the validity of the ordinance, *Mr. Justice Day,* speaking for the Court, said:

"In *Davis v. Massachusetts,* 167 U. S., 43, an ordinance of the city of Boston providing that no person shall make any public address in or upon the public grounds, except in accordance with a permit from the mayor, was held not in conflict with the Fourteenth Amendment to the Constitution of the United States. In *Wilson v. Eureka City,* 173 U. S., 32, an ordinance requiring persons to obtain written permission from the mayor or president of the city council, or in their absence a councillor, before moving a building upon any of the public streets of the city, was sustained as not violative of the Federal Constitution. In the opinion of the Court a number of instances were given in which acts were prohibited except with the consent of an administrative board, and which were sustained as proper exercises of the police power. In *Gundling v. Chicago,* 177 U. S., 183, an ordinance was sustained permitting the mayor to license persons to deal in cigarettes when he was satisfied that the person applying for the license was of good character and reputation and a suitable person to be intrusted with their sale. And in the recent case of *Jacobson v. Massachusetts,* 197 U. S., 11, this Court sustained a compulsory vaccination law which delegated to the boards of health of cities or towns the determination of the necessity of requiring the inhabitants to submit to compulsory vaccination. And in *Fischer v. St. Louis,* 194 U. S., 361, an ordinance of the city of St. Louis providing that no dairy or cow stable should thereafter be built or established within the limits of the city, and no such stable not in existence at the time of the passage of the ordinance should be maintained on any premises, unless permission should have been first obtained from the municipal assembly by ordinance, was sustained as a proper exercise of the police power. After sustaining the right to vest in a board of men acquainted with the local conditions of the business to be carried on, power to grant or withhold permits, this Court said:

" 'It has been held in some of the state courts to be contrary to the spirit of American institutions to vest this dispensing power in the hands of a single individual, *Chicago v. Trotter,* 136 Ill., 430; *Matter of Frazee,* 63 Mich., 396; *S. v. Fisk,* 9 R. I., 94; *Baltimore v. Radecke,* 49 Md., 217; *Sioux Falls v. Kirby,* 6 S. Dak., 62, and in others that such authority cannot be delegated to the adjoining lot owners. *St. Louis v. Russell,* 116 Mo., 248; *Ex parte Sing Lee,* 96 Cal., 354. But the authority to delegate that discretion to a board appointed for that purpose is sustained by the great weight of authority, *Quincy v. Kennard,* 151 Mass., 563; *Commonwealth v. Davis,* 162 Mass., 510, and by this Court the delegation of such power, even to a single individual, was sustained in *Wilson v. Eureka City,* 173 U. S., 32, and *Gundling v. Chicago,* 177 U. S., 183.'

"These cases leave in no doubt the proposition that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the Fourteenth Amendment."

For the reasons stated, I am impelled to dissent from the decision of the majority. I think the ordinances in question are valid.