TOWN OF CLINTON v. GUY R. ROSS.

(Filed 20 November, 1946.)

**1. Municipal Corporations § 40—**

G. S., 160-179, is a part of the Zoning Act, and the equitable remedy of injunction therein authorized applies only to the enforcement of zoning regulations promulgated under the Zoning Act.

**2. Same—**

An ordinance prohibiting the operation of tobacco sales warehouses in certain sections of a municipality cannot be enforced by injunction under G. S., 160-179, as to a warehouse in operation prior to the adoption of zoning regulations by the municipality even if the ordinance be deemed a

CLINTON *v.* ROSS.

part of the later adopted zoning regulations when the zoning ordinance expressly excludes from its operation nonconforming uses existing prior to its adoption.

**3. Municipal Corporations § 36—**

A charter provision giving a municipality power to establish and regulate markets relates only to markets established and operated by the municipality and not to those operated by private individuals.

**4. Municipal Corporations § 40—**

A charter provision giving a municipality authority to regulate certain specified businesses and trades and the sale of certain specified commodities excludes authority over business, trades and markets not specified. *Inclusio unius est exclusio alterius.*

**5. Same—**

Where a tobacco sales warehouse is operated within the business district but outside the fire district of a municipality, and the town has no charter or statutory authority to abate its operation, the city's right to injunctive relief to enforce its ordinance prohibiting the operation of tobacco sales warehouses in that section of the town must be determined in accordance with the general principles controlling the exercise of equity jurisdiction, treating the municipality on the same basis as any other litigant.

**6. Constitutional Law § 11—**

The general welfare is the prime objective of government and the right of the people to the protection of the public health, morals, and safety is the supreme law of the land, to which the right of private ownership of property must yield.

**7. Injunctions § 2—**

The object of equity is to supply the deficiencies of the law, and equity will not interfere when there is an adequate legal remedy.

**8. Injunctions § 4g—**

Injunction will not lie to restrain the violation of the criminal law unless the remedy of prosecution is inadequate because the threatened violation would result in irreparable injury to property or the rights of the public.

**9. Same—**

Inadequacy of punishment or difficulty in obtaining conviction or improper enforcement of a criminal statute is insufficient ground for injunctive relief.

**10. Statutes § 11—**

Where the statute which creates an offense prescribes the penalty for its violation, the particular remedy thus prescribed is exclusive of all other remedies.

**11. Injunctions § 3—**

Injunction will lie to prevent irremediable injury to or destruction of property rights.

**12. Injunctions § 4d—**

Injunction will lie to prevent the maintenance of a public or private nuisance where the public welfare or property rights are injuriously affected.

**13. Municipal Corporations § 40: Injunctions § 4g—**

A municipality may enjoin the operation of a lawful business only if there is something inherent in the nature of the business or in the manner of its operation which has some definite and substantial relation to public health, morals, safety or welfare, and the fact that the business may seriously interfere with the business of others is in itself insufficient.

**14. Same—**

Whether the operation of a business injuriously affects the public health, morals, safety or welfare may frequently depend upon its location and surroundings. That which is harmless in an industrial area may be unsafe or injurious in a thickly settled residential district.

**15. Nuisances §§ 3a, 7a—**

A tobacco sales warehouse is a lawful enterprise and when operated in the usual manner is in no sense a public or private nuisance.

**16. Municipal Corporations § 40: Injunctions § 4g—**

A municipal corporation is not entitled under the general principles of equity to enjoin the operation of a tobacco sales warehouse in an area proscribed by its ordinance when the warehouse is located in the industrial section of the town but not in the fire district and is operated in the customary manner.

**17. Same—**

The fact that the customers of a tobacco sales warehouse congest traffic in the public streets adjacent thereto forms no basis for enjoining the operation of the warehouse, since such condition is produced by the traveling public and is not directed to any condition inherent in the operation of the warehouse or to any conduct on the part of the proprietor.

**18. Same—**

Allegations that the operation of defendant's tobacco sales warehouse depreciates the value of property in close proximity thereto constitutes no basis for enjoining the operation of the warehouse, such injury incident to a lawful business operated in a lawful manner being *damnum absque injuria.*

APPEAL by defendant from *Carr, J.,* at August Term, 1946, of SAMPSON.

Civil action to restrain the violation of a town ordinance.

The Town of Clinton is located in a populous area of North Carolina and in the tobacco belt. The courthouse square is the hub or center around which the town is built. Eight highways enter or pass through this square. The streets are narrow, and on busy days traffic jams are the rule rather than the exception.

In 1945 the people of the town, with the full co-operation of the governing authorities, sought and obtained a tobacco sales market. Plans were made by local citizens to operate three warehouses: one, the Big Sampson Warehouse, was to be located just outside the city limits; one, to be operated by one Taft M. Bass and associates, to be located on McKoy Street; and one by defendant and his associates to be located on Elizabeth Street. Defendant, on 1 June, 1945, applied for and procured a permit to build a warehouse on Elizabeth Street.

When it became certain that a tobacco sales market would be located in Clinton, the Town Board, on 5 June, 1945, enacted an ordinance which makes it unlawful to sell or offer to sell, buy or offer to buy, leaf tobacco, or to establish, operate, or attempt to operate a warehouse for the sale of leaf tobacco (1) within the fire district, (2) in certain designated areas, including Elizabeth Street, and (3) anywhere in the Town of Clinton unless the "operator of such warehouse shall provide immediately adjacent thereto a parking lot or lots containing a minimum of 100,000 square feet of free parking space for the use of the patrons of said warehouse."

The ordinance recites that it is enacted "in order to provide for the orderly marketing of tobacco on said market, to protect the citizens of said town from the increased traffic and fire hazards by reason of establishment of said market."

Shortly thereafter a new board took office and the board, as newly constituted, enacted an amendment thereto which postponed the effective date thereof until 1 December, 1945. The new board took this action for the reason that the ordinance precluded the operation of two of the three proposed warehouses and tended to destroy competition. The defendant and the owners of the Bass warehouse were notified that the ordinance would be enforced on and after its delayed effective date.

Defendant, having obtained a permit therefor on 1 June, 1945, erected a warehouse on property owned by him on Elizabeth Street and operated as a tobacco sales warehouse during the 1945 season. The building was actually erected after the adoption of the ordinance and with knowledge that it was being erected within a proscribed area.

During the 1945 tobacco season the streets in close proximity to defendant's warehouse were completely blocked on various occasions by the traffic thereon, composed largely of vehicles going to and from said warehouse. There were, however, other available streets which might be used by traffic other than that moving to the warehouse of the defendant.

Plaintiff owns a large tract of land covering about one block, adjoining the warehouse property of the defendant. It operates on this property a municipal cotton platform and also a vegetable and fruit auction market. The vegetable and fruit market produces more traffic than does

the defendant's warehouse, and the streets in close proximity thereto have on occasions been completely blocked by vehicular traffic going to and from the fruit market, and the traffic congestion resulting from the operation of said vegetable and fruit market has been considerably greater than that resulting from the operation of defendant's tobacco warehouse. The traffic going to and from plaintiff's cotton market has likewise tended to congest these streets but not to the extent they have been congested by traffic going to and from the vegetable and fruit market of plaintiff and the tobacco warehouse of defendant. The traffic congestion on the streets near plaintiff's property and that of the defendant at times rendered it practically impossible for fire-fighting vehicles to pass through. The ordinance was adopted for the primary purpose of attempting to relieve the resulting traffic and fire hazard.

The plaintiff is seeking to purchase a tract of land elsewhere and intends to remove its vegetable and fruit market and its cotton platform from its present location to the newly acquired property.

The Town of Clinton is located in a populous rural community for which it is the market place, and its streets are unusually narrow. As a result the town is confronted with serious traffic problems.

In the summer of 1946 the defendant began to make preparation and advertised his purpose to reopen his warehouse for the sale of tobacco during the 1946 sales season. Thereupon the plaintiff instituted this action and obtained a temporary restraining order. When the rule to show cause came on to be heard, the court, upon consideration of the evidence offered, found the facts and upon the facts found entered judgment continuing the temporary restraining order to the hearing. The defendant duly entered his exceptions to the findings of fact and to the judgment entered, and appealed.

*H. H. Hubbard and Jeff D. Johnson, Jr., for plaintiff, appellee.*

*J. B. Williams and Varser, McIntyre & Henry for defendant, appellant.*

BARNHILL, J. That defendant's warehouse is so built that by the erection of partitions it can be used for wholesale business establishments may be a fact. Even so, there is nothing in the record to sustain the finding that he erected the building for a dual purpose.

When he obtained a permit to erect a warehouse the designation of Clinton as a tobacco sales market was uppermost in the minds of its people. They, at that time, had cause to feel assured their efforts would be successful. To say that defendant did not have in mind a warehouse to be used for the sale of leaf tobacco would seem to beg the question.

G. S., 160-179, is not a statute of general application. It is a part of our Zoning Act, G. S., ch. 160, Art. 14, and authorizes a suit in equity

to restrain the erection, maintenance, or repair of any building, structure, or land used "in violation of this article or of any ordinance or other regulation made under authority conferred thereby." It has no application here.

Plaintiff does not plead the zoning ordinance of the town adopted in April, 1946. It pleads the 1945 ordinance, as amended, and bottoms its claim to injunctive relief in its complaint and in its evidence squarely on the contention that defendant's intended violation of that ordinance constitutes a threat to the welfare, peace, and safety of the citizens of the town.

In any event, on the facts here presented, the zoning ordinance forms no basis for equitable relief. Defendant's warehouse is in an industrial district as defined by it. Tobacco warehouses are not excepted, unless by the reference in sec. 19 thereof which provides:

"This ordinance shall not be construed as amending or repealing in any respect the tobacco warehouse ordinance enacted by the Board of Commissioners on the 5th day of June, 1945, as amended."

If we concede that this provision is sufficient to add tobacco warehouses to the list of businesses which may not be conducted in said district "until and unless the location of such use shall have been approved by the Board of Commissioners," a provision of doubtful validity, sec. 7, then we are met by sec. 8 of the ordinance which relates to nonconforming uses and provides that:

"The lawful use of a building or premises existing at the time of the adoption of this ordinance may be continued although such use does not conform with the provisions of this ordinance . . ."

The charter of plaintiff municipality, ch. 115, Private Laws Ex. Sess. 1913, does not confer upon it the power to prohibit the maintenance of warehouses of the type here involved. Section 43 (24) of said Act confers authority "To establish markets and market places, and provide for the government and regulation thereof." However, the power to regulate thus conferred relates to markets, such as the vegetable and fruit market, established and maintained by the town.

The Act likewise confers authority to abate nuisances and to regulate certain specified businesses and trades; to control the sale of named commodities; and to direct the location of slaughter houses and certain other buildings. Neither tobacco sales warehouses nor the sale of leaf tobacco is included. *Inclusio unius est exclusio alterius.*

Defendant's warehouse is not located in the fire district of the town. Hence whatever power it may have to regulate or prohibit any building within that area or to enjoin the continued use thereof does not pertain to the business, the operation of which it now seeks to enjoin.

So then, there is no special authority conferred upon the plaintiff by its charter which may be construed to vest power in it to resort to equity for aid in enforcing its ordinances.

Its anomalous position in seeking the aid of equity in the enforcement of its own ordinance can be maintained, if at all, only under recognized general principles controlling the exercise of equity jurisdiction. On this question the plaintiff comes into court as any other litigant with no distinction drawn in its favor. The inquiry is, as it is in cases of an individual seeking the aid of "the strong arm of equity," whether the facts presented show the need of the interference of equity for the protection of rights cognizable by equity. 28 A. J., 342; Anno. 40 A. L. R., 1147, 1149; 91 A. L. R., 316.

The general welfare is the prime objective of government and the right of the people to the protection of the public health, morals, and safety is the supreme law of the land, to which the right of private ownership of property must yield. However, in the enforcement of this right, equity acts within the bounds of, and in accord with, generally recognized principles.

The object of equity is to supply the deficiencies of the law, *Long v. Merrill,* 4 N. C., 549, and so it is axiomatic that equity will not intervene so long as there is an adequate remedy at law.

Likewise it will not exercise its preventive powers for the purpose of enforcing the criminal law by restraining criminal acts. *Hargett v. Bell,* 134 N. C., 394; *Motor Service v. R. R.,* 210 N. C., 36, 185 S. E., 479; *Fayetteville v. Distributing Co.,* 216 N. C., 596, 5 S. E. (2d), 838; *Dean v. S. ex rel. Anderson,* 40 A. L. R., 1132; *New Orleans v. Liberty Shop,* 40 A. L. R., 1136; *Pompano Horse Club v. S. ex rel. Bryan,* 52 A. L. R., 51, Anno. *ibid.* 79; *S. ex rel. Stewart v. Dist. Ct.,* 49 A. L. R., 627; 28 A. J., 336, and numerous authorities cited in notes; 28 A. J., 343, 347; Anno. 9 A. L. R., 925, 40 A. L. R., 1145, 91 A. L. R., 316, Ann. Cas. 1914A, 440; *Denver & S. P. R. Co. v. Englewood,* 4 A. L. R., 956; 3 McQuillin, Mun. Corp. (Rev.), 810.

The fact that the criminal statute is not properly enforced, or that it may be difficult to obtain a conviction, or the punishment prescribed is inadequate, does not furnish a sufficient reason for assuming jurisdiction to enjoin criminal acts. 43 C. J. S., 762; 28 A. J., 337, and cited cases; 28 A. J., 343; Anno. 40 A. L. R., 1154, 91 A. L. R., 318.

Inadequacy of remedy by prosecution at law is grounds for enjoining criminal acts only when such acts threaten irreparable injury to property or to the rights of the public. Anno. 40 A. L. R., 1150, 91 A. L. R., 317.

When an offense is created by statute, not existing at common law, and the penalty for its violation is prescribed by the same statute, the particular remedy thus prescribed must alone be pursued, for the mention of the particular remedy makes the latter exclusive. *S. v. R. R.,* 145 N. C., 495; *McCormick v. Proctor,* 217 N. C., 23, 6 S. E. (2d), 870.

Conversely equity will exercise its preventive powers by restraining:

(1) The irremediable injury or threatened injury to or destruction of property rights. 28 A. J., 339; *Lumber Co. v. Cedar Co.*, 142 N. C., 412; *Town of Roper v. Leary*, 171 N. C., 35, 87 S. E., 945; *Kinsland v. Kinsland*, 188 N. C., 810, 125 S. E., 625; *Frink v. Stewart*, 94 N. C., 484; *Cobb v. R. R.*, 172 N. C., 58, 89 S. E., 807; *S. ex rel. Hopkins v. Howat*, 25 A. L. R., 1210; Anno. 40 A. L. R., 1145, 1163; *Watson v. Buck*, 313 U. S., 387, 85 L. Ed., 1416.

(2) The maintenance of a public or private nuisance where the public welfare or property rights are injuriously affected. 28 A. J., 344; *New Orleans v. Liberty Shop, supra; S. ex rel. Stewart v. Dist. Ct., supra; S. ex rel. La Prade v. Smith*, 92 A. L. R., 168; *In re Debs*, 158 U. S., 564, 39 L. Ed., 1092; *S. ex rel. Blue v. Balt. & O. R. Co.*, L. R. A., 1916F, 1001; *Olson v. Platteville*, 91 A. L. R., 308; *Bennington v. Hawks*, 50 A. L. R., 982; Anno. 40 A. L. R., 1159, 91 A. L. R., 320; 4 McQuillin, Mun. Corp. (Rev.), 205; 2 Dillon, Mun. Corp., 1039.

(3) The maintenance of a business or enterprise, even though lawful, when there is something inherent in the manner of its operation which constitutes a threat to the general welfare, health, morals, or safety of the community. 37 A. J., 962; *Montgomery v. West*, 13 Ann. Cas., 651; Anno. 40 A. L. R., 1157; *Cosgrove v. Augusta*, 42 L. R. A., 711.

But the nature of the business or manner of operation must bear some definite and substantial relation to public health, morals, safety, or welfare—and oftentimes this is to be determined in the light of the location and surroundings. That which is harmless in an industrial area may be unsafe or injurious in a thickly settled residential district. *Turner v. New Bern*, 187 N. C., 541, 122 S. E., 469; *Wake Forest v. Medlin*, 199 N. C., 83, 154 S. E., 29; *Ahoskie v. Moye*, 200 N. C., 11, 156 S. E., 130; *Lawrence v. Nissen*, 173 N. C., 359, 91 S. E., 1036; *S. v. Bass*, 171 N. C., 780, 87 S. E., 972; *S. v. Vanhook*, 182 N. C., 831, 109 S. E., 65; *Barger v. Smith*, 156 N. C., 323, 72 S. E., 376; *Brunswick-Balke Co. v. Mecklenburg*, 181 N. C., 386, 107 S. E., 317; *Fayetteville v. Distributing Co., supra; Commonwealth v. Hubley*, 51 N. E., 448; *Kirk v. Mabis*, 87 A. L. R., 1055; Anno. *ibid.* 1061; 2 Dillon, Mun. Corp., 1046; 11 A. J., 1056; *Bennington v. Hawks, supra.*

The right to restrain does not exist unless the business is inherently injurious to the public health, safety, or morals, or has a tendency in that direction. There must be something in the methods employed which renders it injurious to the public. It is not enough that it seriously interferes with the business of others.

Municipalities cannot interfere with the lawful use of property for a lawful purpose. 43 C. J., 414, and numerous authorities cited in notes, including *S. v. Staples*, 157 N. C., 637, 73 S. E., 112, and *S. v. Whitlock*, 149 N. C., 542. They are given the power to conserve, not to impair,

private rights. *Maxwell v. Miami,* 33 A. L. R., 682; *Rochester v. Gutberlett,* 211 N. Y., 309; *People ex rel. Goldberg v. Busse,* 88 N. E., 831 (Ill.); *Commonwealth v. Malatsky,* 24 L. R. A. (n.s.), 1168; *Chicago v. Netcher,* 55 N. E., 707 (Ill.); *Chicago v. Drake Hotel Co.,* 113 N. E., 718 (Ill.).

"To justify an interference with an enjoyment of private property, two facts must be established: first, that the property, either *per se* or in the manner of using it, is a nuisance; and, second, that the interference does not extend beyond what is necessary to correct the evil." *Chicago v. Gunning System,* 114 Ill. A., 377 (Aff. 214 Ill., 628, 73 N. E., 1035).

Applying these general principles controlling equity jurisdiction to the facts appearing on this record, we are constrained to hold that plaintiff has failed to make out a case for injunctive relief.

A tobacco sales warehouse is a lawful enterprise and the medium through which the farmers of the State market one of its largest income-producing crops. It appears throughout the tobacco belts of this and other States. In no sense is it a public or private nuisance.

The court below found that the warehouse of defendant is operated in the same manner as are other warehouses of like kind throughout the tobacco belt. When so conducted there is nothing inherent in the manner of operation which constitutes a menace to the general welfare, health, morals, or safety of the community.

It is located in an industrial section of plaintiff municipality. Hence its location and surroundings do not render the manner of operation, otherwise lawful, a threat to the general welfare.

There is no allegation, proof or finding that defendant has committed a purpresture or that he owns or operates any vehicles on the public streets of the town or otherwise contributes to the congestion of traffic about which it complains. Plaintiff bottoms its case upon the contention that defendant's customers are so numerous that while traveling on the public streets, where they have a right to be, in going to and from his place of business, they congest, and at times completely block, the streets adjacent to the warehouse. In making this contention it seems to overlook the fact that this is only one of the contributing factors added to the tremendous traffic produced by customers of businesses it conducts and the travel of the general public which produces the undesirable result.

Be that as it may, the complaint is not directed to any condition inherent in the operation of the warehouse or to any conduct on the part of the defendant. It relates to the conduct of those who compose a part of the traveling public.

The municipality has full power and authority to regulate and control the traffic on its streets. Its inability or unwillingness to do so should not be charged to a private owner merely because a great proportion

of those using the streets are going to or from his place of business. Certainly a condition thus produced by the traveling public, and not by defendant, forms no basis for the intervention of a court of equity.

Plaintiff alleges further that the continued existence of defendant's warehouse as such depreciates the value and restricts the proposed sale of its adjoining property and the court below found that "its value will likely be depreciated as well as the value of other property in close proximity thereto should the defendant operate his tobacco warehouse on the adjoining property . . ."

What we have already said answers this contention. If anything further need be added, it is this:

We may not always choose our neighbors and so, in the give and take of life, our neighbor is one of the things we must "take." So long as he conducts a lawful business in a lawful manner and there is nothing inherent in the manner of operation which, under the surrounding circumstances, is obnoxious or which wrongfully invades the property rights of others his undesirability is *damnum absque injuria.*

Plaintiff cites and relies on a line of cases represented by *Fayetteville v. Distributing Co., supra.* In the *Fayetteville case* the defendant was preparing to store on its premises, located in the fire district of plaintiff municipality, a large quantity of a highly combustible substance. It was its action, and not the action of its customers, which created the hazard to the public safety. In *Turner v. New Bern,* 187 N. C., 541, 122 S. E., 469, the plaintiff was seeking to restrain the enforcement of an ordinance which prohibited the maintenance of lumber yards and loading wharves or docks in a thickly settled residential section. There the location and surrounding conditions rendered objectionable that which was otherwise lawful. Other citations are similarly distinguishable.

Defendant stressfully contends that the 1945 ordinance, as amended, is arbitrary, unreasonable, and *ultra vires.* Ordinarily that is a question for the criminal courts to decide. *Jarrell v. Snow,* 225 N. C., 430; *Lanier v. Town of Warsaw, ante,* p. 637. A court of equity will entertain it only when necessary to prevent irreparable loss to property or property rights. Since in no event is plaintiff entitled to equitable relief, we pass the question without decision.

For the reasons stated the judgment below is

Reversed.