W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. DAN QUINERLY AND WIFE, MABEL B. QUINERLY; W. H. HICKSON AND WIFE, LENA P. HICKSON; C. G. CRADDOCK AND WIFE, CORA A. CRADDOCK; AND W. C. FIELDS AND WIFE, BETTIE TULL FIELDS.

CASE REFERRED TO HERE AS NO. ONE.

W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. C. G. CRADDOCK AND WIFE, CORA A. CRADDOCK; DAN QUINERLY AND WIFE, MABEL B. QUINERLY; W. H. HICKSON AND WIFE, LENA P. HICKSON; AND W. C. FIELDS AND WIFE, BETTIE TULL FIELDS.

CASE REFERRED TO HERE AS NO. TWO.

W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. W. C. FIELDS AND WIFE, BETTIE TULL FIELDS; W. H. HICKSON AND WIFE, LENA P. HICKSON; DAN QUINERLY AND WIFE, MABEL B. QUINERLY; AND C. G. CRADDOCK AND WIFE, CORA A. CRADDOCK.

CASE REFERRED TO HERE AS NO. THREE.

W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. DAN QUINERLY AND WIFE, MABEL B. QUINERLY; W. H. HICKSON AND WIFE, LENA P. HICKSON; W. C. FIELDS AND WIFE, BETTIE TULL FIELDS; AND C. G. CRADDOCK AND WIFE, CORA A. CRADDOCK.

CASE REFERRED TO HERE AS NO. FOUR.

W. L. SUTTON AND WIFE, ANNIE FIELDS SUTTON, v. MABEL B. QUIN-
ERLY; CORA A. CRADDOCK; JOHN HICKSON AND WIFE, THELMA
JENKINS HICKSON; LOIS HICKSON SCOTT AND HUSBAND, K. D.
SCOTT; WILLIAM F. HICKSON AND WIFE, MARGARET COUCH HICK-
SON; EDWARD B. HICKSON; ROBERT W. HICKSON; PHILIP H.
HICKSON AND WIFE, WINAFRED ALLEN HICKSON; ANN HICKSON
BOWEN AND HUSBAND, HARRY BOWEN; JAMES F. HICKSON, AND
RICHARD C. HICKSON; AND FRANCES FIELDS HOLLIDAY AND HUS-
BAND, JOSEPH W. HOLLIDAY.

CASE REFERRED TO HERE AS NO. FIVE.

(Filed 12 April, 1950.)

**1. Judgments § 32—**

Where successive proceedings are instituted for the sale of separate
parcels of real property devised *en masse* in a single item of a will and it
appears that the parties to all the proceedings are the same or are privies
to deceased parties, *held* an adjudication of the respective rights of the
parties in the property is *res judicata* even though only a part of the prop-
erty was involved at the time of the rendition of the judgment, since title
to all the lands devised by the single item of the will hangs upon the same
thread.

**2. Appeal and Error § 8—**

An appeal will be determined in accordance with the theory of trial in
the lower court.

**3. Wills §§ 32, 38—**

The rule against partial intestacy is not one of public policy, but is to
be employed solely for the purpose of ascertaining the intent of testator,
and therefore it cannot operate to throw into a residuary clause (expressly
limited to property not disposed of in prior devises) the remainder after
a life estate when it is apparent from the construction of the entire instru-
ment that testator intended to dispose of such remainder in the same item
which created the life estate.

**4. Wills § 31—**

The intent of testator is his will, and such intent will be gathered from
the four corners of the instrument, and to this end the court may transfer
words and phrases to prevent the clear intention of testator from being
defeated by inept use of language.

**5. Wills § 33g—Where devise is for life with remainder to life tenant's
children, but if she "does not marry" then to her surviving brother and
sisters, held marriage of life tenant does not defeat limitation over.**

By parallel devises to each of his children testator directed that his child
should take a life estate and "after her death, if she shall have married
and borne children (or a child) by such marriage, I give, devise and be-
queath said lands . . . to such child or children—and, if she does not
marry, I give, devise and bequeath" said lands to her brother or sisters
her surviving. *Held:* The contingency upon which the remainder was to
vest in the brother or sisters surviving the life tenant was the death of the

life tenant without surviving child of her marriage, and it was not the intent of testator that the subsequent marriage of the life tenant should defeat the limitation over to her surviving brother and sisters, and *held further*, the devise makes complete disposition of the property leaving no contingent interest to fall into the residuary clause.

PETITIONERS' appeal from *Grady, Emergency Judge,* November 1949 Civil Term, LENOIR Superior Court.

This appeal, captioned as above, more immediately concerns the petition of John Hickson *et als.,* filed in Lenoir Superior Court August 26, 1949, and the adverse judgment of Grady, J., from which the appeal was taken.

The petition, both in its caption and the body, sets forth a number of proceedings for the sale of the lands devised in Item 5th of the Will of William C. Fields, Sr., deceased, which were from time to time consolidated by order of the court, for the purposes stated in the record, into "one case." From the proceedings which form the background of the controversy under review we draw in condensed form the factual history and legal implications and the rationale of decision, with such detailed elaboration as may be necessary.

William C. Fields, Sr., died in 1902, leaving a last will and testament in which he made provision for his five children, married and unmarried: Lena P. Hickson, Mabel B. Quinerly, Annie C. Fields, William C. Fields, Jr., and Cora Agnes Fields; and for his grandchildren *in esse* and yet to be born, with contingent devise as further appears *infra.* The present controversy concerns the disposition of the remainder in fee of the property devised in Item 5th after the life estate of Annie C. Fields; and, therefore, the proper construction of this item of the Fields will.

Item 5th of the will reads as follows:

"I loan to my daughter Annie C. Fields, the following lots and lands: The lot on which stands the Farmers Warehouse—corner of Heritage and Gordon Streets—being about 110 x 190 feet—the lot on which Geo. Herring now lives adjoining the lot of H. D. Spain— (on Queen Street)—and the lot now occupied by J. A. Long—being about 55 or 60 feet front by 210 deep. The vacant lot next to the lot in which Tom Cox now lives on East side of Independence street, between Washington and Lenoir Streets—being about 20 x 200 feet. The vacant square or lot on west side of W. &. W. Rail Road, about 132 x 265 feet adjoining lots formerly belonged to L. Harvey on the west and Mrs. Lillian Perry on the south and the W. & W. Rail Road on the east—The tract of land—about 350 acres in Vance Township known as 'Moore Dale' on which Josh Mewborn now lives, during the term of her natural life and, after her death, if she shall have mar-

ried and borne children (or a child) by such marriage, I give, devise and bequeath said lands—and lots to such child or children—and, if she does not marry, I give, devise and bequeath said lots and lands to her brother or sisters who may survive her to them, their heirs and assigns."

Item 8th of the will reads as follows:

"I give and devise to my children Lena P. Hickson, Annie C. Fields, Mabel B. Quinerly, Wm. C. Fields, Jr. and Cora A. Fields all the real estate which I may own, or in which I may have an interest (not included in the devises above,—at the time of my death, to be equally divided among them—share and share alike. And in all cases where I have—given options to tenants or others, in writing, to purchase any of the lots or lands embraced in either of the devises above set forth, and such option holder desires to comply with the terms of such option, it is my will and desire that the child or children to whom such lands or lots are loaned shall execute a deed, in fee simple, to the purchaser and that such deed shall convey a perfect title to said land or lots."

Subsequent to the death of W. C. Fields, Sr., Lena P. Hickson died, leaving surviving her nine children, now petitioning; and in October, 1946, William C. Fields, Jr., died, leaving one child, Frances Fields Holliday, also a party to the petition.

Subsequent to the death of W. C. Fields, Sr., Annie Fields married W. L. Sutton, and Cora Fields married C. S. Craddock. Annie Fields Sutton died in July, 1949. Cora Craddock and Mabel Quinerly are the only children of W. C. Fields surviving Annie.

Beginning with August 5, 1916, and down to August 1, 1947, inclusive, five successive, independent proceedings were brought in the name of W. L. Sutton and wife, Annie Fields Sutton, for the sale of separate parts of the land described in Item 5th of the will, and in each instance the sales were decreed, made and confirmed, and the proceeds placed in the hands of a commissioner of the court to hold for future distribution. To facilitate the administration of the proceeds as one fund, the proceedings, having reached four in number, were consolidated; and after subsequent terms of court the last named proceeding designated as "Case Number Five" was consolidated with the others as "one case." The main purpose of each proceeding, as stated, was to make sale of the particular part of the property described in Item 5th and upon this all of the parties to the proceedings agreed.

In the proceeding designated as Case No. Five, like all the others, a petition to sell a part of the lands devised under Item 5th (the petitioner

is Annie Fields Sutton and husband), describing the interest of the several parties therein, alleged that:

> "The ownership of the remainder interest in said land is contingent awaiting the death of the plaintiff Annie Fields Sutton, by which event only can the ownership of said remainder interest be made certain and known, unless it be that because of the marriage of the said plaintiff Annie Fields Sutton, Item Five of the will of W. C. Fields, deceased, should be construed as a provision whereby the said tract of land goes in fee to the heirs at law of said testator, W. C. Fields, deceased."

In a further defense Cora Craddock, admitting the necessity of the sale, denied this allegation, and averred:

> "That this answering defendant contends that the proper and legal construction of the fifth item of the will of her father, W. C. Fields, which is herein involved is that the vested remainder interest in the tract of land in question go at the death of the plaintiff Annie Fields Sutton to the brother or sisters of said plaintiff who may survive her, and that therefore if this defendant and her sister, Mabel B. Quinerly, survive the said plaintiff the said tract of land will go exclusively to them, or to either of them who may survive her; and that if neither this defendant nor the defendant Mabel B. Quinerly survives the said Annie Fields Sutton, then the said lands will go in general to the heirs at law of the said testator, W. C. Fields, deceased, under the statutes of descent as by inheritance."

John Hickson and other parties to the proceeding being the petitioner in the proceeding now under review, answered as follows:

> "These defendants say that the life tenant, Annie Fields Sutton, having married and being now the wife of the plaintiff W. L. Sutton, an event has happened which ends the contingency as to the remainder interest in the said land and, therefore, the said remainder interest has become vested in the heirs of the testator, W. C. Fields, and at present should the said Annie Fields Sutton now die, the remainder interest would be taken as by inheritance . . ."

And in their prayer for relief demanded:

> "That it be decreed that the said Annie Fields Sutton (mentioned in the will as 'Annie C. Fields') having married, the fifth item of the will devise nothing except a life estate to her, the marriage of said plaintiff having converted the contingent remainder interest under

said item to a remainder estate of inheritance by the heirs at law of W. C. Fields, deceased . . ."

And the parties respectively asked for judgment in accord with their construction of Item 5th of the will.

The judgment in the Superior Court ordering the sale of the property designated the interests of the parties therein as follows:

"That the plaintiff Annie Fields Sutton owns an estate in said land for and during the term of her natural life, and the ownership of the remainder interest therein is contingent awaiting the death of the plaintiff, Annie Fields Sutton, by which event only can the ownership of said remainder interest be made certain and known. That at the death of the said Annie Fields Sutton the said land will go in fee to the defendants Mabel B. Quinerly or Cora A. Craddock, if only one shall survive the said Annie Fields Sutton. If neither of said defendants shall survive the said Annie Fields Sutton, then said land will go in remainder in fee to the heirs at law of the said W. C. Fields, deceased, the testator, in fee simple by inheritance."

From this portion of the said judgment the parties other than Mabel B. Quinerly and Cora A. Craddock appealed to the Superior Court. The matter was heard by Judge Luther Hamilton at September Term, 1947, of Lenoir Superior Court, who, after finding facts, rendered judgment to the effect "that the adjudication as to the title made by the lower court is correct and proper in law and therefore said judgment is in all respects affirmed, both as to findings of fact and conclusions of law."

The defendants, except Mabel B. Quinerly and Cora A. Craddock to whom the judgment was favorable, excepted and appealed to the Supreme Court.

Thereafter the appeal was heard and opinion and decision filed therein 29 October 1947 and subsequently entered with the records of the Superior Court of Lenoir County by Williams, J. *Sutton v. Quinerly,* 228 N.C. 106, 44 S.E. 2d 521.

Subsequently an order of court was made consolidating this proceeding with the other four proceedings, all five consolidated proceedings to be known as "one case."

The petition under review, as indicated by its caption, is "for the construction of Item 5th of the will of William C. Fields, Sr., deceased." It includes in its body reference to the various proceedings as Cases One to Five and refers by letter and page to the judgment docket in Lenoir County where they may be found, and also includes reference to the judgment roll in each of the proceedings above enumerated. It alleges

that the proceeds of the various sales above mentioned have accumulated until there is now $37,297.10 in the hands of the commissioner of the court, Leo H. Harvey, and that certain property described in Item 5th remains unsold, of the value as contended of $25,000. It questions no part of the proceedings theretofore had except the construction of Item 5th of the will; and as to this demand judgment in accordance with the construction placed by the petitioners thereupon.

The petition was answered by Mabel B. Quinerly and Cora A. Craddock who allege that under the terms of the will and those contingencies which have been resolved they are the sole owners of the property in controversy, one-half each, as the only children of William C. Fields, Sr., surviving their sister, Annie Fields Sutton.

In a further answer and as a plea in bar to the relief sought in the petition, they allege and plead that the petitioners are estopped from setting up any right, title or interest to the lands involved in this controversy, or the proceeds of any sales thereof, particularly referring in support of said plea to all the judgment rolls appearing in the record in said proceedings, and especially the judgment rendered by Judge Hamilton in Case No. Five, and the opinion, decision and judgment of the Supreme Court, on appeal from Judge Hamilton, reported in *Sutton v. Quinerly, supra,* and duly filed in the records of the Superior Court of Lenoir County, all of which they contend operates as *res judicata.* They also aver that irrespective of such estoppel, under the correct interpretation of Item 5th of the will and the facts which have transpired with reference to the contingency therein, the answering defendants Cora Craddock and Mabel Quinerly are the sole owners of the disputed properties.

The matter came before Judge Grady at November Term, 1949, of Lenoir County Superior Court, who, on the hearing of the matter and full argument, found the facts, made his conclusions of law, and entered his judgment as follows:

"That Mabel B. Quinerly and Cora A. Craddock, the only sisters surviving Annie Fields Sutton, deceased, the life tenant, are owners in equal shares of all the funds in the hands of the Commissioner, and representing the proceeds of sale of said lands, devised under Item Five of the will of William C. Fields, Sr., deceased, and that they are seized and entitled to the immediate possession of a fee simple estate in and to the remaining lands described and devised in Item Five of the will; and that the petitioners have no interest in said funds and no interest in any remaining lands described and devised under Item Five."

The judgment then authorized and directed Leo H. Harvey, Commissioner of the Court, to file a complete and final accounting of his commissionership of said funds, and pay over and deliver to the said Mabel

B. Quinerly and·Cora A. Craddock, share and share alike, "all monies, notes, or investments in his hands as Commissioner of the Court representing the proceeds of sale of the lands devised under Item Five of said will or any investments of the proceeds of sale made by said Commissioner under previous orders of the Court."

The petitioners excepted and appealed, assigning errors.

*John G. Dawson and Varser, McIntyre & Henry for petitioners, appellants.*

*Whitaker & Jeffress and Hugh Dortch for respondents, appellees.*

SEAWELL, J. The principal assignments of error fall into two classes: Objections to the interpretation Judge Grady gave to the orders of consolidation as being too broad, thereby "spreading" his conception of the devise in Item 5th of the will, and possibly the effectiveness of the plea of *res judicata* over all the proceedings so consolidated; and those designed to preserve the contention that appellants are devisees under the will. We do not find it necessary to discuss the first class in detail since it seems clear that if the purpose was only to facilitate the handling of the funds and conserve them for distribution, that purpose is sufficient to include all matters affecting the rights of those contending themselves to be distributees; and whether the proceedings be considered in the aggregate or as discrete transactions, it would not affect the plea in bar if found applicable.

It appears from the record and by reference to the judgment rolls therein that from the beginning of the litigation and through all of the consolidated proceedings the litigating parties are either identical or privies in interest as successors of former parties, and privies to such judicial determination of right as pertains to the subject matter dealt with in the decision of *Sutton v. Quinerly,* 228 N.C. 106, 44 S.E. 2d 521, including such rights as it was the duty of the parties to plead or assert in that cause as essential to the final determination of the controversy. The same identity of parties and privies where death has removed some of the parties and substituted others in the same interest appears now in the case before us for decision; and the subject matter is the same: The property devised in Item 5th of the will to Annie C. Fields for life, with contingent remainder in fee to others; which carries with it the disputed disposition of the remainder in fee on resolution of the contingency.

True, when the case reported *sub nomine Sutton v. Quinerly supra,* was before us only a part of that property was involved in the petition for sale and the incidental construction of the will. But the property described in Item 5th was. devised integrally and the title to every part

of it hangs upon the same thread. Its potentiality of infinite physical subdivision could not so affect the principle of *res judicata* as to make a hundred suits necessary to estoppel.

The identity of parties and privies and of subject matter in the several judgment rolls set out in the record, with those in the cited case of *Sutton v. Quinerly,* all within the scope of the judgment in that case exhibited in the record, is sufficient to sustain the plea of *res judicata* and estoppel invoked by the appellees.

But whether we deal with *res judicata* or its little brother in principle, "the law of the case," the appellants insist that *Sutton v. Quinerly* is so outstandingly erroneous in its construction of the will as to justify the Court in relaxing the rigidity of either rule, by exception and correction. The gist of the grievance against *Sutton v. Quinerly* is that the Court missed the real point at issue and indulged in improvident discussion of the rule against intestacy, whereas it was obvious that the fee-remainder passed as a testate provision under a residuary clause,—referring to Item 8th of the will quoted *supra.*

Counsel may ignore it, but cannot expect the Court to be oblivious to the fact that since *Sutton v. Quinerly* was decided here on appeal the present appellants have executed a complete about-face respecting their claim to the property, and are in process of changing horses in the middle of the stream. In *Sutton v. Quinerly* they made no claim, either in the lower court or here on appeal, that they were entitled to the property under the residuary clause as testate beneficiaries; but on the contrary claimed that W. C. Fields failed to pass the remainder in fee by his devise in Item 5th of the will *and died intestate* as to that interest, claiming exclusively by inheritance from W. C. Fields, Sr. See "Records and Briefs, Fall Term, 1947, 6-15," where, in their brief, they present it as the only question before the Court.

It is the custom of reviewing courts to consider cases within the frame of the appeal and to give consideration to the basis of the claim presented rather than, *ex mero motu,* to force litigants into a position which they have regarded as less strategic.

We may examine the case from this new angle without reference to the prior adjudication. It does not necessarily change the result or the reasoning by which it was reached. The appellants still have to hurdle the dispositive language used in Item 5th contended by them to fall short of the devise of the remainder in fee, as well as the restricting language of the residuary item, (a particular, not a general residuary clause), which they contend carries a testamentary devise of the subject interest to them.

The rule against partial intestacy is not one of public policy, operating regardless of intent, or in contradiction of manifest intent, but an aid

to finding the intent when the meaning is unclear. It is based on experience, reason and a recognition of normal human conduct in the area of its application. Analogous reasoning may be safely applied to the instant question: Whether William C. Fields has, within the confines of Item 5th, completed the devise of all his interest in the subject property, or, because of the nature of the contingency, has left the remainder interest undevised therein.

For the purpose of testamentary -disposition Fields made a mental division of his extensive real property, and put these parts, so to speak, in separate cubicles of his will, in which, respectively, the five living children were the first objects of his bounty, and next in importance were the grandchildren, some of them already born to married children, and others possibly to be born to others at that time unmarried. One of these cubicles is Item 5th, the immediate subject of this controversy. There are four other similar items in which the problem of disposition is, upon the face of them, similarly worked out with regard to the other four children.

*The manner of dealing with the subject matter is strongly persuasive of the intention to complete the devise of the property in Item 5th of the will in the disposing formula there used.*

Is it reasonable to suppose that Fields, having come down to the disposition of the property included in this Item, and having given to Annie a life estate therein, and having undertaken to deal with the remainder in fee, failed to carry through the business and let it slip from his hands unfinished, *dum fovet opus,* either into the statute of descent and distribution or the catch-all of a doubtful residuary clause? That sort of thing is not easily explained by reference to a residuary clause when we are looking for the intent where it ought to be found, (if the testator could keep his affections in mind long enough), rather than for a mere legal effect, which neither loves nor remembers.

A closer look at the language used in the devise bears this out. *The devise is in sequence, in one compound sentence written in parallel construction, the parts of which are obviously so related as to be complementary and must be construed together to make a complete sentence.*

The appellants, as stated, contend that the negative branch of the sentence, *i.e.,* ". . . if she does not marry . . ." expresses the entire contingency on which the succession of the sisters Quinerly and Craddock, the appellees, depend; that it stands alone without necessity of construction, and without reference to the other limb of the sentence or closely associated context. "It is so written." This sort of dichotomy does not reflect the common sense theory of construction and does not satisfy the other rules we are constrained to apply.

The intent of the will is to be gotten from its four corners, *Trust Co. v. Shelton,* 229 N.C. 150, 48 S.E. 2d 41; *Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247. And the intent is the will. *Jarrett v. Green,* 230 N.C. 104. Certainly a part of the same sentence dealing with the same subject may be consulted to find the real meaning and intent of an expressed condition which, unexplained, would otherwise be unusual, arbitrary and unique in the scheme of disposition.

We cannot assent to the view that the maker of this will, having carefully provided for the succession of his grandchild, or grandchildren to the fee in case Annie married, would, in the same breath nullify that possibility and disinherit his grandchildren solely because she married. It involves an absurdity which justifies the Court in clarifying the whole sentence, in order to find a reasonable intent. 57 Am. Jur., Wills, 1127, 1129: "The inconvenience or absurdity of a devise is no ground for varying the construction where the terms are unambiguous. But when the intention is obscured by conflicting expressions, it is to be sought in a rational and consistent rather than in an irrational and inconsistent purpose." *Graham v. Graham,* 23 W.Va. 36, 40 Am. Rep. 334; *Holland v. Smith,* 224 N.C. 255, 29 S.E. 2d 888; *Williams v. Rand, supra;* *Pilley v. Sullivan,* 182 N.C. 493, 109 S.E. 539.

The conclusion is inescapable that Fields did not intend to make two distinct contingencies, contradictory to each other, the last destroying the first. To him the failure to marry meant the failure of issue born to any marriage which Annie might contract, and was intended to be an alternative statement of the contingency, meaning that if Annie did not have issue by marriage, (to whom in that event he had already devised the property), the remainder should then go to the brother or sisters who should survive the holder of the life estate; and the Court is justified in reading that construction into the will. In *Gordon v. Ehringhaus,* 190 N.C. 147, 129 S.E. 187, it is said: "In performing the office of construction the Court may reject, supply or transpose words and phrases in order to ascertain the correct meaning and to prevent the real intention of the testator from being rendered aborted by his inept use of language," citing *Carroll v. Mfg. Co.,* 180 N.C. 366, 104 S.E. 895, and *Tayloe v. Johnson,* 63 N.C. 381; *Williams v. Rand, supra.* Only by such construction could harmony be brought into the dispository language and bring out what we conceive and hold to be its intent.

In view of the conclusion we have reached, it is not necessary to burden the residuary clause, at most of doubtful receptivity, or the statute of descent and distribution, with an estate sufficiently limited and devised when first dealt with in the will.

For the reasons stated we find the proceeding in the court below free from error, and the judgment must be

Affirmed.