MARTA DOBROWOLSKA, A MINOR, AND PAWEL DOBROWOLSKI, A MINOR, BY AND THROUGH THEIR GUARDIAN AD LITEM, ROBERT DOBROWOLSKI, AND ROBERT DOBROWOLSKI, INDIVIDUALLY, PLAINTIFFS V. MICHAEL W. WALL AND THE CITY OF GREENSBORO, DEFENDANTS

No. COA98-1533

(Filed 16 May 2000)

**1. Immunity— governmental—police officer—automobile accident—governmental function**

The trial court did not err in granting summary judgment in favor of defendants on the basis of governmental immunity for damages incurred by plaintiffs in an automobile accident with a police officer while the officer was driving defendant city's van back to work after taking the van for repairs, because: (1) the officer was performing a governmental function since the repair and subsequent return of the van to the city's garage was incident to the police power of the city; and (2) the officer was acting within the scope of his duties as a police officer in returning the police van to storage, and thus, was immune from liability in his individual capacity.

**2. Immunity— governmental—police officer—automobile accident—excess liability fund—not local government risk pool**

The trial court did not err in granting summary judgment in favor of defendants and concluding defendants did not waive governmental immunity for damages of $350,000 incurred by

1

plaintiffs in an auto accident with a police officer while the officer was driving the city's van back to work after taking the van for repairs, because: (1) the city only waived immunity for claims in excess of $2,000,000 and less than $4,000,000 by their purchase of excess liability insurance coverage for these claims; and (2) the city's participation in the Local Government Excess Liability Fund, Inc. (fund) is not classified as a local government risk pool since the fund will not actually pay for any part of the claim, and the fund has not complied with N.C.G.S. § 58-23-5 for the creation of a local government risk pool.

3. **Civil Rights— 1983 action—city's unwritten policy on governmental immunity—substantive due process—equal protection**

The trial court erred in granting summary judgment in favor of defendants on the issue of defendant city's alleged violations of plaintiffs' substantive due process and equal protection rights under 42 U.S.C. § 1983 and Article I, Section 19 of the North Carolina Constitution, based on the city's unwritten policy of waiving governmental immunity and paying claims for damages to tort claimants similar to plaintiffs while asserting immunity and refusing to pay plaintiffs' claims, because there are genuine issues of material fact concerning: (1) whether the city's policy is arbitrary and capricious; and (2) whether such behavior is reasonably related to a legitimate governmental objective.

Appeal by plaintiffs from an order entered 14 August 1998 by Judge Melzer A. Morgan, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 5 October 1999.

*Fisher, Clinard & Craig, PLLC, by John O. Craig, III and Shane T. Stutts, for plaintiff-appellants.*

*Hill, Evans, Duncan, Jordan & Davis, PLLC, by Polly D. Sizemore and Joseph P. Gram, for defendant-appellees.*

HUNTER, Judge.

Plaintiffs appeal from an order granting defendants Michael W. Wall ("Wall") and the City of Greensboro ("City") summary judgment. The issues relevant to this appeal are whether defendants may assert governmental immunity for damages incurred by plaintiffs in an auto accident with Wall while he was driving the City's van; whether the City participates in a local government risk pool; and, whether the

**DOBROWOLSKA v. WALL**

[138 N.C. App. 1 (2000)]

City has violated plaintiffs' equal protection and substantive due process rights by its assertion of governmental immunity as to their claims while it has admitted settling claims of similar tort claimants. We affirm in part and reverse in part.

Evidence submitted to the trial court indicated that on Monday, 13 February 1995, defendant Wall, a Greensboro police officer, was driving a van owned by the City when he struck a vehicle operated by Alicja Dobrowolska. Her children, the two minor plaintiffs Marta and Pawel Dobrowolska, were passengers in the vehicle and were injured as a result of the accident.

Wall was on his way to work when the accident occurred. He had driven the van home over the weekend because he had taken it for repairs the preceding Friday afternoon, and returning to work that same day would have caused him to work past his shift. Wall also performed minor repairs while the van was at his home during the weekend, for which he received permission by his supervisor.

This suit was subsequently filed, wherein plaintiffs made claims against defendants for Wall's negligence in the auto accident and violation of a city ordinance, waiver of governmental immunity by the City due to participation in a local government risk pool, and the City's violation of plaintiffs' equal protection and substantive due process rights. On 14 August 1998, the trial court granted summary judgment to defendants on all claims, stating in pertinent part:

> IT APPEARING TO THE COURT that at the time of the accident defendant Michael W. Wall was performing a duty as a police officer, a purely governmental function; that the City of Greensboro has not waived governmental immunity by the purchase of insurance for claims of $2,000,000.00 or less and $4,000,000.00 or more; that plaintiffs and defendants stipulate that plaintiffs' damages do not exceed $2,000,000.00; that the City of Greensboro does not participate in a risk pool; that the Local Government Excess Liability Fund, Inc. is not an illegal risk pool and therefore, [defendants] are entitled as a matter of law to summary judgment . . . [.]

The court concluded that there was no showing that Wall acted outside of and beyond the scope of his duties as a police officer in returning the police van to storage, and therefore he was immune from liability in his individual capacity. It also ruled that the City was not a person under U.S.C.A. § 1983 when the remedy sought is monetary

damages, thus plaintiffs' substantive due process and equal protection claims were dismissed.

First, we note that summary judgment is the device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56. "The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact by the record properly before the court." *Johnson v. Insurance Co.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980).

[1] Plaintiffs first contend that the trial court erred in granting summary judgment on the basis of governmental immunity. They argue that defendants waived any defense under this doctrine because defendant City was engaged in the proprietary function of vehicle repair and/or modification rather than a governmental function at the time of the collision.

The rule of governmental immunity was adopted by the North Carolina Supreme Court in *Moffitt v. Asheville*, 103 N.C. 237, 9 S.E. 695 (1889). The rule set out in *Moffitt* and stated with approval by our Supreme Court in *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E.2d 239 (1971), is as follows:

"The liability of cities and towns for the negligence of their officers or agents, depends upon the nature of the power that the corporation is exercising, when the damage complained of is sustained. A town acts in the dual capacity of an *imperium in imperio*, exercising governmental duties, and of a private corporation enjoying powers and privileges conferred for its own benefit.

"When such municipal corporations are acting (within the purview of their authority) in their ministerial or corporate character in the management of property for their own benefit, or in the exercise of powers, assumed voluntarily for their own advantage, they are impliedly liable for damage caused by the negligence of officers or agents, subject to their control, although they may be engaged in some work that will enure to the general benefit of the municipality. . . .

"On the other hand, where a city or town in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of

the public, it incurs no liability for the negligence of its officers, though acting under color of office, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence. . . ."

*Id.* at 592-93, 184 S.E.2d at 241-42 (quoting *Moffitt*, 103 N.C. 237, 254, 9 S.E. 695, 697). The Court in *Steelman* held that a city's operation of its public street lighting system was a governmental function rather than proprietary, thus the city was completely immune from liability for an individual's death due to the city's negligent maintenance of a guy wire. *Steelman*, 279 N.C. 589, 184 S.E.2d 239. Based on *Moffitt* and its progeny, "[t]he rule that a municipal corporation is immune to suit for negligence in the performance of a *governmental* function of the municipality, but is liable if it is fulfilling a function of a *proprietary* character is well settled in this jurisdiction." *Glenn v. Raleigh*, 246 N.C. 469, 473, 98 S.E.2d 913, 916 (1957) (emphasis in original).

In the present case, there are no genuine issues of material fact as to why the van was in use at the time of the accident. It was being returned to the City after repairs by defendant Wall and a repair shop at the same time it was transporting a city police officer to work. A similar factual situation occurred in *Lewis v. Hunter*, 212 N.C. 504, 193 S.E. 814 (1937), where a vehicle used by a city in exercise of its police power was involved in an accident after being returned to the police garage after a repair. In that case, our Supreme Court stated:

[I]t is contended by the plaintiff that since Spear, the driver of the Terraplane automobile, was not invested with any police authority, the automobile was not in use at the time in the performance of any police duty. While it is true the driver of the car was not a policeman, he was employed by the hour by the city to keep in proper repair and condition the radio on said automobile, and it was the function of the city in the exercise of its police power to maintain the radio, and in the performance of the work for which he was employed Spear was performing duties incident to the police power of the city, whether he was engaged in repairing or testing the radio or whether in returning the automobile to the police garage after such repairing or testing, and anything that he did for the city with the automobile in the scope of his employment was done as an incident to the police power of the city—a purely governmental function.

*Id.* at 509, 193 S.E. at 817. Likewise, the van in the present case was being returned to the City's garage for the City's use after it had been

repaired. Additionally, a police officer was using the van to report to duty for the City. Thus, we hold as a matter of law that the repair and subsequent return of the van was incident to the police power of the City, a governmental function. Accordingly, we overrule plaintiffs' first assignment of error, concluding that the City and Wall are both immune from liability because Wall's negligence took place while he was performing a governmental function for the City. In so holding, we note that the trial court concluded that Wall did not act outside of or beyond the scope of his duties as a police officer in returning the police van to storage, and was thus immune from liability in his individual capacity. Plaintiffs did not assert error on this issue. Therefore, the trial court's ruling on this issue became the law of the case. *Pack v. Randolph Oil Co.*, 130 N.C. App. 335, 337, 502 S.E.2d 677, 678 (1998) (*citing Duffer v. Dodge, Inc.*, 51 N.C. App. 129, 130, 275 S.E.2d 206, 207 (1981); *Sutton v. Quinerly*; *Sutton v. Craddock*; *Sutton v. Fields*, 231 N.C. 669, 677, 58 S.E.2d 709, 714 (1950) (the law of the case doctrine is the "little brother" of *res judicata*); 18 James W. Moore et al., *Moore's Federal Practice* § 134.20[1] (3d ed. 1997) (law of the case doctrine is "similar" to collateral estoppel "in that it limits relitigation of an issue once it has been decided").

[2] Next, plaintiffs contend that the trial court erred in granting summary judgment because the City has waived governmental immunity by participating in a local government risk pool.

By statutory rule, municipalities are deemed to waive governmental immunity only through the purchase of insurance: "[a]ny city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. . . . Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability." N.C. Gen. Stat. § 160A-485(a) (1999); *see Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 321-22, 420 S.E.2d 432, 435 (1992). However, our statutory code "equates participation in a 'local government risk pool' with the purchase of insurance for the purposes of a city's immunity from liability." *Lyles v. City of Charlotte*, 120 N.C. App. 96, 101, 461 S.E.2d 347, 350 (1995), *reversed on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996), *reh'g denied*, 345 N.C. 355, 483 S.E.2d 170 (1997). To participate in a local government risk pool, "two or more local governments may enter into contracts or agreements . . . for the joint purchasing of insurance or to pool retention of their risks for property losses and liability claims and to provide for the payment of such losses of or claims made against any member of the pool. . . ." N.C. Gen. Stat. § 58-23-5 (1999).

## DOBROWOLSKA v. WALL

[138 N.C. App. 1 (2000)]

"[T]he risks of the parties must be put in one pool for the payment of claims in order to have a local government risk pool." *Lyles v. City of Charlotte*, 344 N.C. 676, 680, 477 S.E.2d 150, 153.

The City contends that it does not participate in a local government risk pool pursuant to Article 58 of our General Statutes, but does participate in the Local Government Excess Liability Fund, Inc. ("Fund"). The Fund was incorporated in 1986 for the payment of claims and in 1993 was divided into three separate funds—A, B, and C. According to the affidavit of Everette Arnold, Executive Director of the Guilford City/County Insurance Advisory Committee, the Fund operates as follows in regards to claims against the City:

> The City of Greensboro pays directly out of its budget any claim which it settles or for which it is found to be legally liable up to $100,000.00. Fund B is available to pay claims exceeding $100,000.00, up to $600,000.00, subject to the City of Greensboro paying the first $100,000.00. In the event Fund B makes any claims payments, the City of Greensboro is obligated to repay Fund B the entire amount so paid. Fund A was established to pay claims in excess of $600,000.00 up to a maximum of $1,600,000.00, after exhausting the City's direct responsibility for payment of the first $100,000.00, and after Fund B payment of $500,000.00. Fund C was established to provide payment for any amount in excess of $1,600,000.00 up to $1,900,000.00. If the claim against the City of Greensboro exceeds $1,900,000.00, the City would be obligated to pay the additional amount up to $2,000,000.00. The City has purchased a $2,000,000.00 excess liability insurance policy above the $2,000,000.00 liability limit.

> Members of the Fund in 1995 were the City of Greensboro, the City of High Point, Guilford County, the Guilford County Board of Education, and Guilford Technical Community College. . . . The governmental agencies participating in the Fund share costs only for the administration of the Fund. There is no sharing of risks among the members of the Fund for any claim under $600,000.00. All such claims under $600,000.00 which are paid from Fund B are the direct responsibility of the participating member against which the claim is asserted, and any payments made by Fund B must be repaid by the participating governmental agency.

Thus, the City individually retains the risk for claims under $100,000.00, and is obligated to repay Fund B the entire amount so paid for claims exceeding $100,000.00 but under $600,000.00.

A risk pool is required "to pay all claims for which each member incurs liability during each member's period of membership, except where a member has individually retained the risk, where the risk is not covered, and except for amount of claims above the coverage provided by the pool." N.C. Gen. Stat. § 58-23-15(3) (1999). Our Supreme Court has interpreted this statute by holding that

> there must be more risk-sharing than is contained in the City's agreement in order to create a local government risk pool. . . . [A] local government risk pool agreement must contain a provision that the pool pay all claims for which a member incurs liability. We do not believe the pool has paid a claim if it is reimbursed for it.

*Lyles*, 344 N.C. at 680, 477 S.E.2d at 153. Thus, immunity is not waived when a claim is paid for which the pool is reimbursed, because the pool has not paid the claim and the requirements of N.C. Gen. Stat. § 160A-485 have not been met. *See* N.C. Gen. Stat. § 160A-485(a) ("[i]mmunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability").

It is uncontroverted that the City has purchased excess liability insurance coverage for claims in excess of $2,000,000.00 and less than $4,000,000.00; therefore, it has waived immunity as to claims that are within this range. Plaintiffs in the present case are seeking $350,000.00 in damages. The evidence in the record indicates that if the Fund were to pay plaintiffs' claims, the City would be required to reimburse the fund for payment in excess of $100,000.00 up to $600,000.00, and the City would be responsible for paying the first $100,000.00. Under *Lyles*, the Fund cannot be classified as a local government risk pool as to the present case because it will not actually pay for any part of the claim. Additionally, the fund in question has not complied with the requirements of North Carolina General Statutes Chapter 58, "Insurance," Article 23, "Local Government Risk Pools" for the creation of a local government risk pool. Among other things, the Fund does not comply with this article because two members of the fund are not "local governments," no notice was given to the Commissioner of Insurance that the participating entities intended to organize and operate a risk pool pursuant to statute, and the Fund does not contain a provision for a system or program of loss control as required by statute. Under *Lyles*, these factors are to be considered in determining the existence of a risk pool. Based on the foregoing, we hold that the Fund is not a local government risk pool

in regards to plaintiffs' claims and thus the City has not waived governmental immunity by participating in the Fund. Accordingly, we overrule plaintiffs' second assignment of error.

[3] Plaintiffs next contend that the trial court erred by granting defendant City's motion for summary judgment because there are genuine issues of material fact as to whether the City violated their Equal Protection and Substantive Due Process rights under the United States Constitution as enforced by 42 U.S.C. § 1983, and Article I, Section 19 of the North Carolina Constitution. Plaintiffs assert that they have been denied due process and equal protection of the law because the City has asserted sovereign immunity in their case but has customarily waived it for similarly situated individuals, who were compensated for tort damages incurred due to the City's performance of a governmental function. The City contends that it is not a person under § 1983 and therefore is immune from suit under this statute.

Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress.

42 U.S.C.A. § 1983 (1994). Our Supreme Court has held that neither a state nor its officials acting in their official capacity are "persons" for purposes of § 1983 when the remedy sought is monetary damages. *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). Based on *Corum*, this Court held a § 1983 action is not permitted against a municipality when damages are sought in the form of monetary relief because the municipality is not a "person" under § 1983. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 460 S.E.2d 899 (1995), *affirmed in part and reversed in part*, 345 N.C. 356, 481 S.E.2d 14 (1997). However, our Supreme Court reversed on this issue stating that in determination of this issue,

> the Court of Appeals erroneously relied on *Corum v. University of N.C.*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985,

121 L. Ed. 2d 431 (1992). In *Corum*, this Court correctly relied on *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45 (1989), in holding that the State of North Carolina and its agencies are not "persons" within the meaning of section 1983 and therefore could not be sued for monetary damages under that statute. In the present case, the Court of Appeals erroneously applied the holding of *Corum* to dismiss plaintiffs' claims against a municipality and its officials. Although a municipal government is a creation of the State, it does not have the immunity granted to the State and its agencies. *See Owen v. City of Independence*, 445 U.S. 622, 63 L. Ed. 2d 673 (1990).

. . .

The United States Supreme Court, in *Monell v. Department of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611 (1978), overruled *Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492 (1961), and held that a municipality is a "person" within the meaning of section 1983. The United States Supreme Court stated: "Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 690, 56 L. Ed. 2d at 635. *Monell* did not, however, overrule *Monroe* insofar as *Monroe* held that the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under section 1983 for constitutional torts of their employees. Id. at 663 n.7, 56 L. Ed. 2d at 619 n.7. Instead, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 56 L. Ed. 2d at 635. This decision was recently reaffirmed in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 122 L. Ed. 2d 517 (1993).

For a governmental entity to be liable under section 1983, the "official policy must be 'the moving force of the constitutional violation.' " *Polk County v. Dodson*, 454 U.S. 312, 326, 70 L. Ed. 2d 509, 521 (1981) (quoting *Monell*, 436 U.S. at 694, 56 L. Ed. 2d at 638). Thus, the entity's "policy or custom" must have played a part in the violation of federal law. *Monell*, 436 U.S. at 694, 56 L. Ed. 2d at 638. Further, it is well settled that a municipal entity has no

claim to immunity in a section 1983 suit. *See Owen v. City of Independence*, 445 U.S. at 657, 63 L. Ed. 2d at 697.

*Moore*, 345 N.C. at 365-66, 481 S.E.2d at 20-21 (emphasis in original). Plaintiffs in the present case have alleged that the City has acted unconstitutionally by implementing a policy which violates their due process and equal protection rights. These acts include the custom of waiving governmental immunity and paying claims for damages to tort claimants similar to plaintiffs while asserting immunity and refusing to pay plaintiffs' claims. These acts are adopted and implemented by the City's officers. Thus, plaintiffs' claims and request for damages are sufficient to sue the City as a person pursuant to § 1983. We shall now determine if genuine issues of material fact exist as to these claims, and if there are none, whether the City was entitled to summary judgment under Rule 56.

The City has revealed that for the period of 1992 to 1995 it settled a number of claims for personal injury and property damage. Included was a claim settled for $25,025.95 for injuries suffered by a minor when a police officer pulled into the path of claimants' vehicle. Another claim for injuries suffered in a similar automobile accident case was settled by the City for $95,000.00. According to the deposition of Deputy City Attorney Becky Jo Peterson-Buie, the amount of damages is not dispositive in the City's decision in any case as to whether it will assert the governmental immunity defense. Buie stated that a portion of claims are delegated to an adjuster who has full settlement authority without any oversight from the City as to whether sovereign immunity is asserted or waived. She also admitted that the City has paid damages in the settlement of cases where the sovereign immunity defense was available. However, Buie testified that the City always raises the defense of sovereign immunity if applicable. Further, Buie testified that the City Manager has unbridled discretion to resolve any claims under $50,000.00, and in cases exceeding this amount, the recommendation of the City Manager must be approved by the City Council.

The substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no government shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do we look to see if the

State's procedures comport with due process." *American Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 59, 143 L. Ed. 2d 130, 149 (1999) (citations omitted). In making this determination, it is necessary to assess whether the right allegedly implicated was clearly established at the time of the events in question. *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n.5, 140 L. Ed. 2d 1045, 1054, n.5 (1998).

The right implicated in the present case is one to recover damages for bodily injury of the two minor plaintiffs. In legal contemplation, the term "damages" is the sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury done or a wrong sustained as a consequence of either a breach of a contractual obligation or a tortious act. 22 Am. Jur. 2d *Damages* § 1 (1988). Generally, a person who acts tortiously or in breach of a contractual obligation is liable for the damage caused by such wrongful act. 22 Am. Jur. 2d *Damages* § 4 (1988).

> Compensatory damages are damages in satisfaction of, or in recompense for, loss or injury sustained. They compensate a plaintiff for actual injury or loss resulting, for instance, from bodily injury or property damage. The term covers all loss recoverable as a matter of right and includes all damages (beyond nominal damages) other than punitive or exemplary damages.

22 Am. Jur. 2d *Damages* § 23 (1988) (footnotes omitted). While plaintiffs would ordinarily be entitled to seek damages in a tort action in the courts of this state, as we have held, the City in the present case is immune from suit under the doctrine of governmental immunity due to performance of a governmental function. We have also held that the City has not waived immunity by the purchase of liability insurance, and it is uncontroverted that the City has not consented, by any other means, to being sued by plaintiffs. However, the record reveals that at the same time the City has asserted governmental immunity towards plaintiffs, denying them any damages, it has asserted such immunity against injured individuals similar to plaintiffs, but then waived immunity by paying damages to those injured individuals. The United States Supreme Court has held that when a state has no constitutional obligation to grant certain rights to individuals, but establishes a policy wherein it does grant that right, it must do so in accordance with due process:

> Even if a State has no constitutional obligation to grant criminal defendants a right to appeal, when it does establish appellate courts, the procedures employed by those courts must

satisfy the Due Process Clause. *Evitts v. Lucey*, 469 U.S. 387, 396, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985). Likewise, even if a State has no duty to authorize parole or probation, if it does exercise its discretion to grant conditional liberty to convicted felons, any decision to deprive a parolee or a probationer of such conditional liberty must accord that person due process. *Morrissey v. Brewer*, 408 U.S. 471, 480-490, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-782, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). . . .

*Ohio Adult Parole Auth. v. Woodward*, 523 U.S. 272, 292-93, 140 L. Ed. 2d 387, 403-04 (1998) (Stevens, J., concurring in part and dissenting in part). As with state welfare programs, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause." *Evitts v. Lucey*, 469 U.S. 387, 401, 83 L. Ed. 2d 821, 833 (1985). The City has opted to pay damages to some claimants after asserting governmental immunity; therefore, it must carry out this custom, or "unwritten" policy in a way which affords due process to all similarly situated tort claimants with actions against the City.

The Due Process Clause was intended to prevent government officials " 'from abusing [their] power, or employing it as an instrument of oppression.' " *Collins v. Harker Heights*, 503 U.S. 115, 126, 117 L.Ed.2d 261, 274 (1992) (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196, 103 L. Ed. 2d 249, 259 (1989)). The United States Supreme Court has stated:

> Since the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action:

> "The principal and true meaning of the phrase has never been more tersely or accurately stated than by Mr. Justice Johnson, in *Bank of Columbia v. Okely*, [17 U.S. 235,] 4 Wheat 235-244, [4 L. Ed. 559 (1819)]: 'As to the words from Magna Charta, incorporated into the Constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at last settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.' " *Hurtado v. California*, 110 U.S 516, 527, 28 L. Ed. 232, 4 S. Ct. 111 (1884).

> We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolf v. McDonnell*, 418 U.S. 539, 558, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g., Fuentes v. Shevin*, 407 U.S. 67, 82, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972) . . ., or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g., Daniels v. Williams*, 474 U.S. at 331, 88 L. Ed. 2d 662, 106 S. Ct. 662 . . . .

*County of Sacramento v. Lewis*, 523 U.S. at 845-46, 140 L. Ed. 2d at 1056-57.

Arbitrary and capricious acts by government are also prohibited under the Equal Protection Clauses of the United States and the North Carolina Constitutions. No government shall deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1; N.C. Const. art. 1, § 19. " 'The purpose of the [E]qual [P]rotection [C]lause . . . is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Edward Valves, Inc. v. Wake County*, 343 N.C. 426, 433, 471 S.E.2d 342, 346, *reh'g denied*, 344 N.C. 444, 476 S.E.2d 115 (1996), *cert. denied*, 519 U.S. 1112, 136 L. Ed. 2d 839 (1997) (quoting *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 352-53, 62 L. Ed. 1154, 1155-56 (1918)). "The principle of equal protection of the law is explicit in both the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Constitution of North Carolina. This principle requires that all persons similarly situated be treated alike." *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996) (citations omitted). The Supreme Court of North Carolina has held that the decisions of the United States Supreme Court on the issue of equal protection are binding in this state and:

> Courts traditionally have employed a two-tiered scheme of analysis when evaluating equal protection claims. The upper tier of equal protection analysis requiring strict scrutiny of a governmental classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. . . .

> When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvan-

tage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied. The "rational basis" standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government. Additionally, in instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity.

*White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983) (citations omitted). Similarly, the traditional test to judge whether government action violates substantive due process is to determine whether the challenged action has "a rational relation to a valid state objective." *In re Moore*, 289 N.C. 95, 101, 221 S.E.2d 307, 311 (1976). Plaintiffs concede that they are not a member of any suspect class under an equal protection analysis and do not allege discriminatory intent. Because they merely allege the City's treatment of them is "arbitrary" and "capricious," plaintiffs argue that the City's custom or policy of settling claims triggers constitutional review under the lower tier "rational basis" test. We agree. Therefore, in consideration of plaintiff's claims for violations of substantive due process and equal protection by the City, we shall first examine what acts have been ruled to constitute arbitrariness and capriciousness by the courts of this state.

Several cases in courts of this state give guidance as to what action constitutes arbitrary and disparate treatment. In *City-Wide Asphalt Paving v. Alamance County*, 132 N.C. App. 533, 513 S.E.2d 335 (1999), the plaintiff had made a bid for paving which was rejected by Alamance County, and plaintiff asserted that the county had arbitrarily and capriciously failed to accept its bid. This Court held that "defendant's reasons for rejecting plaintiff's bid, namely concern about whether plaintiff was 'competent and qualified and financially able' to operate the landfill, were reasonable in relation to the government's objective to protect the health and safety of its citizens, and its decision to reject plaintiff's bid was not arbitrary or capricious." *Id.* at 540, 513 S.E.2d at 340.

In *Bizzell v. Goldsboro*, 192 N.C. 348, 135 S.E. 50 (1926), the plaintiff contended that an ordinance was unconstitutional and void in that it vested arbitrary discretion in public officials, without prescribing a uniform rule of action or making uniform regulations applicable to all alike. The ordinance at issue provided that no gasoline filling or gaso-

line storage station should be located, conducted, or operated in the City of Goldsboro "without first obtaining consent from the board of aldermen at some regular meeting thereof." *Id.* at 350, 135 S.E. at 51. Our Supreme Court held that the ordinance was void, stating:

> The ordinances are far-reaching, and the law does not permit the enjoyment of one's property to depend upon the arbitrary or despotic will of officials, however well-meaning, or to restrict the individual's right of property or lawful business without a general or uniform rule applicable to all alike.

> No ordinance is enforceable in matters of this kind, a lawful business, that does not make a general or uniform rule of equal rights to all and applicable to all alike—then there can be no special privilege or favoritism. The ordinance gives the power to the board of aldermen at their pleasure to grant one person a license and refuse another under the same circumstances. . . . The right of individuals to engage in any lawful calling and use their property for lawful purposes is guaranteed to them, and any unreasonable restraint or oppressive exaction upon the use of property and utmost liberty of business growth and advancement is contrary to the fundamental law of the land.

*Id.* at 358, 135 S.E. at 55.

In *In re Application of Ellis*, 277 N.C. 419, 178 S.E.2d 77 (1970), our Supreme Court held that the action of the county commissioners denying an application for a permit to establish a mobile home park as a special exception was arbitrary and capricious where all ordinance requirements were met and stating that the commissioners could not deny a permit "solely because, in their view, a mobile-home park would 'adversely affect the public interest.' The commissioners must also proceed under standards, rules, and regulations, uniformly applicable to all who apply for permits." *Id.* at 425, 178 S.E.2d at 81.

Although plaintiffs in the present case are not seeking a permit to do business, they do allege they are enjoined from their right to enjoyment of life, liberty, and property because they have been denied damages for bodily injuries caused by the City while similarly situated individuals have been awarded damages. Plaintiffs have presented evidence that the City's custom, or unwritten policy, does not apply any uniform rule of action or regulations applicable to all tort claimants against the City. As we have noted, the deputy city attorney testified that a portion of claims are delegated to an adjuster who has

full settlement authority without any oversight from the City as to whether sovereign immunity is asserted or waived. The adjuster has the authority to settle a claim for property damage up to $15,000.00 and up to $10,000.00 for a claim for personal injury. Likewise, the city manager may settle a claim without any oversight for up to $50,000.00. There is no evidence that any criteria are used to refer cases to these individuals, or that any criteria are applied by these individuals in making a decision to settle a claim. The deputy city attorney further testified if a claim is not settled by the city manager or outside adjuster, the City's legal department determines whether to settle a claim based on the following factors:

a. whether there was a negligent act by an employee of the City;

b. whether there was an intentional tort by a City employee;

c. what, if any, defenses are available for the City, including the defense of governmental immunity and contributory negligence;

d. whether any defenses, including governmental immunity, is available for the employee in his individual capacity;

e. whether the employee of the City violated any departmental regulations;

f. the cost of defending the case;

g. goodwill on behalf of the citizens; and,

h. the best use of the taxpayer's money in a cost effective manner.

Several of these factors, such as "goodwill on behalf of the citizens" are subjective, and do not indicate or mandate that similarly situated individuals be treated alike. The City gives no explanation or rules for applying all of these factors in a factual situation; thus, it appears that the ultimate decisionmaker, whoever it may be, is granted total discretion despite analysis using these factors.

While the City may not have established written "classification" categories for claimants, the record reveals that it classifies claims under $2,000,000.00 into two different categories—(1) immunity is asserted with no exception, or (2) immunity is asserted but the claim is paid in settlement. The City states that it must be given the unlimited discretion in these cases due to a legitimate governmental interest. However, the United States Supreme Court has stated that

"[d]iscretion without a criterion for its exercise is authorization of arbitrariness." *Brown v. Allen*, 344 U.S. 443, 496, 97 L. Ed. 469, 509 (1953). Under *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 509 S.E.2d 165 (1998), governmental classification of individuals into two categories is admissible under an equal protection analysis if (1) the classifications are based on differences between the individuals, and (2) these differences are rationally related to the purpose of the policy. *Id.* at 675, 509 S.E.2d at 177. Also, the City's actions may pass constitutional muster under the Equal Protection Clause "if they have a reasonable basis and are rationally related to a legitimate governmental objective." *City-Wide*, 132 N.C. App. at 541, 513 S.E.2d at 340. In *Lyles*, 344 N.C. 676, 477 S.E.2d 150, the Court considered whether a city participated in a local government risk pool, and the present issue was not considered by the Supreme Court. However, the present Chief Justice Frye opined in his dissent the subject city's policy, which is similar to the policy in the present case, is both arbitrary and capricious:

> The problem with allowing local governments to enter into "joint undertaking" contracts, such as the one at issue in the instant case, is that it gives local governments the unbridled discretion to pay some claims and to assert governmental immunity as to those claims that it does not wish to pay. Under such a scheme, the decision of the local government officials is not reviewable, and the awards to injured parties may be distributed on an arbitrary basis without any opportunity for the injured party to have the decision of the local government reviewed by the courts. *Even the State of North Carolina does not have such unbridled discretion. . . .*

*Lyles v. City of Charlotte*, 344 N.C. 676, 684, 477 S.E.2d 150, 155 (1996) (Frye, J., dissenting) (emphasis in original).

When viewed in the light most favorable to plaintiffs, we are not prepared to hold that summary judgment should be granted to defendant on this final issue as a matter of law. The City asserts that it reviews cases for certain factors and that it should be given total discretion as to whether or not it settles tort claims under $2,000,000.00. However, the City has shown no determining principle or rules to apply to these factors, or claims, which require that similarly situated individuals be treated equally. The City argues that assertion of sovereign immunity in certain tort claims saves tax dollars and encourages the morale of its police officers. While we do not rule as to whether these are valid governmental objectives, we note

that if they are, the City does not offer an explanation as to how its differing treatment of tort claimants is based on differences between the claimants and how these differences are rationally related to a legitimate governmental objective. Our review indicates that plaintiffs may bring suit under § 1983 for monetary damages against the City, and there are genuine issues of material fact as to whether or not the policy of the City has violated plaintiffs' due process and equal protection rights due to arbitrary and capricious behavior, and likewise, whether such behavior is reasonably related to a legitimate governmental objective.

Based on the foregoing, we hold that summary judgment for both defendants was proper as to their (1) lack of liability for damages stemming from the automobile accident under the doctrine of governmental immunity, and (2) failure to waive governmental immunity due to participation in a local government risk pool. However, we hold that summary judgment for defendant City as to plaintiffs' third, fourth, and fifth claims for relief, based on the City's alleged violations of their substantive due process and equal protection rights was error and that portion of the trial court's order is reversed, and those claims are remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

Judges GREENE and WALKER concur.